GEORGE SMITH, BY ERNEST SMITH, HIS NEXT FRIEND, AND ERNEST SMITH, INDIVIDUALLY, PLAINTIFFS-RESPONDENTS, v. CLAUDE NEON LIGHTS, INCORPORATED, A CORPORATION, DEFENDANT-APPELLANT.

Submitted October 28, 1932—Decided January 31, 1933.

For the defendant-appellant, *Collins & Corbin*.

For the plaintiffs-respondents, *William George* and *Edwards, Smith & Dawson*.

The opinion of the court was delivered by

WELLS, J. This appeal brings up for review judgment in favor of the plaintiffs-respondents, recovered in the Hudson Circuit Court against two defendants, The Trust Company of New Jersey (hereinafter referred to as the Trust Company) and the Claude Neon Lights, Incorporated (hereinafter referred to as the Light Company).

A suit was brought by George Smith, a minor, by Ernest Smith, his next friend, and Ernest Smith, individually, against the Trust Company and the Light Company to recover damages for personal injuries alleged to have been suffered because of the negligence of defendants.

Judgments were rendered against both defendants.

The Light Company alone appeals.

The facts for the most part are undisputed.

The Light Company by virtue of an agreement with the Trust Company erected on the roof of the building of the Trust Company a Neon light sign which consisted of a large steel framework on which appeared a display sign containing the words "The Trust Company of New Jersey." This sign was illuminated at night. At the bottom of this sign (which is spoken of as the main sign), the Light Company attached a small sign made of metal about ten feet long and two feet wide, weighing about twenty-five pounds, on which was painted "Erected by Claude Neon Lights Inc." The small sign could not be illuminated.

On June 16th, 1926, an agreement was entered into between the two defendants for the erection of a "Claude Neon Electric Roof Sign," and in that agreement no mention was made of the small sign. The specifications describe only the main sign. The small sign was not an electric sign. By this agreement the Light Company guaranteed the Trust Company against mechanical and electrical defects in the sign (that is, the main sign) for the period of one year from the date of completion.

On December 21st, 1926, there was executed what was described in the case as a "Maintenance Contract," wherein the Light Company agreed to maintain "the Claude Neon Tube Sign" for a period of twenty-four months beginning one year from the date of erection of said sign for the sum of $173 per month, payable each month in advance. The small sign was not a tube sign and the maintenance contract therefore had to do only with the main sign.

Under this maintenance contract the Light Company agreed to paint the sign twice during the period of maintenance and

by the second paragraph agreed "to install new parts of equipment (transformers, tubing and wiring) where any or all fail to give service so that sign becomes inoperative in ordinary course of operation in part or whole, when and only when such parts of equipment are not wholly or partially destroyed due to strikes, or acts of God, labor unions, fires, floods, earthquakes, war or other conditions or contingencies beyond the control of purchaser or comapny" (referring to Trust Company). The third paragraph required the Light Company to carry such necessary parts as might be required to minimize delay in the Trust Company not having full benefit of the sign.

The Trust Company on its part agreed under paragraph "A" "to carry insurance or be personally liable for repairs on sign made necessary by causes for which the company [referring to Light Company] is not liable under section No. 2" (quoted above); and also to notify the Light Company promptly by quickest manner when the sign became inoperative or damaged in any manner; and to carry full insurance on the sign and in the event of destruction in whole or part by fire, to reimburse the Light Company for full cost of work done under the maintenance contract to the date of such damage. A reading of this contract shows it had reference only to the main sign.

The testimony showed that the sign was erected and in operation the latter part of December, 1926, or the early part of January, 1927.

On January 6th, 1929, during the terms of the maintenance contract, the small sign became dislodged and fell to the street, striking the infant plaintiff, who was riding a bicycle on Bergen avenue, Jersey City, and resulting in the injuries for which this suit was brought. The allegation of negligence in the complaint charges either or both of the defendants with the duty of a reasonable care in the erection or securing of the small sign in a manner to prevent the same from becoming loose and falling from the framework and with the further duty of reasonable care in making inspection of said sign, and charges the defendants with a failure of these duties.

Appellant argued three grounds of appeal: *First,* the trial court should have granted a nonsuit or directed a verdict in its favor. *Second,* there were errors in the charge. *Third,* the trial court erroneously refused to charge as requested.

The question presented under the first ground of appeal is whether there is any evidence to sustain a finding of negligence against the Light Company. We think there was.

In the first place, it is undisputed that the Light Company erected the small sign. There is nothing in either the original contract or the maintenance contract indicating that there was any obligation on the part of the Light Company to erect or maintain the small sign for the Trust Company.

The Trust Company evidently knew that the small sign was on their building and it may well be that the Trust Company simply tolerated its presence there. From the testimony it might be inferred that the Light Company had no authority to attach their advertising sign to the main sign, and in doing so was acting for itself and not for the Trust Company.

The evidence shows that the words on the small sign could be seen from the street, and it is in evidence that the employes of the Light Company were frequently on the roof of the Trust Company inspecting or doing something to the *main* sign and that they had access to the *main* sign, and impliedly to the small sign. This afforded the Light Company the opportunity of knowing its condition.

An investigator after the accident found pieces of wire on the small sign and corresponding pieces of wire on the framework of the main sign where it appeared that the small sign had been fastened.

The testimony showed that there were two small holes in the two upper corners of the small sign through which the wires passed, and these wires were submitted to the jury who had an opportunity of inspecting them for the purpose of ascertaining their size, strength, age and condition.

While the evidence of a negligent erection of the small sign on the part of the Light Company is meagre, yet we think that there was sufficient facts from which the jury had a right to infer negligence.

While it is a well established general rule that where the work of an independent contractor is completed, turned over to and accepted by the owner, the contractor is not liable to third persons for damages or injuries subsequently suffered by reason of the condition of the work, even though the contractor was negligent in carrying out the contract, yet this rule is based upon the reason that the owner and not the contractor's negligence in such a case is the proximate cause of the injuries, the theory being that by occupying and resuming exclusive possession of the work, the owner deprives the contractor of all opportunity to rectify his wrong. The duty of inspection and repairing in such a case is exclusively upon the owner.

In the instant case, however, the proofs fail to show that there was an exclusive control and possession of the small sign by the Trust Company. On the contrary, the proofs tend to show that at the time of the accident, the Light Company had not entirely vacated that part of the Trust Company building where its small sign was erected, and consequently the Trust Company had not entirely assumed control. It may be said in the instant case as was said by this court in *Fort* v. *Reid Ice Cream Co.*, 98 *N. J. L.* 559, that both of these companies were in partial control—but the only effect of this is that both might be liable for a lack of care resulting in injuries to a third person.

The fact that the small sign was on the building of the Trust Company gave the Trust Company a possession and control over it from which it could not escape liability in case the failure to inspect and repair the small sign resulted in injury to some passerby.

On the other hand, the fact that this small sign was there for the sole benefit of the Light Company, who had attached it to the main sign for purposes of its own and who had access to the roof where it was located, was an indication that the small sign was also in the control and possession of the Light Company.

The Light Company offered no testimony to show that the sign had been properly erected in the first place, or inspected and kept in repair by it during the term of the maintenance

contract. There was no testimony to show that the small sign was a part of the main sign, or upon what terms or conditions it was erected by the Light Company. In the absence of such testimony the small sign will have to speak for itself. On its face it was a self advertising sign for the Light Company.

There is no doubt that the doctrine of *res ipsa loquitur* applies to the Trust Company but it seems to us that it equally applies to the Light Company in the situation presented. Appellant agrees that the situation so far as the Trust Company is concerned is one of *res ipsa loquitur,* but says it does not apply as against appellant because it was not in possession or control of the signs. Appellant cites *Mumma* v. *Easton and Amboy Railroad Co.,* 73 *N. J. L.* 653, that the principle of *res ipsa loquitur* is that:

"When through any instrumentality or agency under the management or control of a defendant or his servants there is an occurrence, injurious to the plaintiff, which, in the ordinary course of things, would not take place if the person in control were exercising due care, the occurrence itself, in the absence of explanation by the defendant, affords *prima facie* evidence that there was want of due care."

Appellant's contention is based upon the assumption (which we think is not warranted by the evidence) that the Trust Company had exclusive possession and control over the small sign. It seems to us that under the facts and circumstances of this case there was shown sufficient evidence of partial possession and control on the part of the Light Company to warrant the application of the doctrine of *res ipsa loquitur* against the Light Company, as well as against the Trust Company.

If the Light Company, with or without the permission of the Trust Company, undertook to hang its own sign upon the main sign of the Trust Company to advertise itself, in a position where the small sign would be subject to the severity of the winds and to fasten it up, as the evidence indicates, with a couple of wisps of a sixteenth of an inch hay wire, through a little hole punched in each end of the sign, and permit it to swing from the main sign fastened in the way indicated by the evidence, for a period of more than two

years during which the Light Company had daily access to the sign, with the result that the wire broke, when subjected to a strong wind, and the sign fell into the street, striking the infant plaintiff, we think that this gave rise to a situation such as would entitle a jury to infer negligence on the part of the Light Company for whose benefit this sign was apparently placed upon the roof of the Trust Company.

This leads us to the conclusion that there was no error in refusing to nonsuit or direct a verdict for the Light Company.

As to the other grounds of appeal, namely, that the court erred in instructing the jury and in failing to instruct as requested, we have carefully looked over the portions of the charge objected to in connection with the charge as a whole and we fail to see any harmful error in any of them.

The court left it to the jury to determine the ownership and control of the small sign and how and by whom it was affixed to the main sign. We think that the testimony of the investigator, the policeman and building superintendent of the Trust Company and of the wire itself constituted sufficient evidence to justify the court's charge on these points.

As to the point that the trial court erroneously refused to charge as requested, it is sufficient to say that the main points necessary for a proper consideration of the case by the jury appear to have been fully covered in the court's charge.

There were many lengthy requests to charge; some of these were substantially charged, others were properly rejected, and those which were omitted were not essential to the determination of the questions in issue, and the remaining requests were substantially charged in so far as appellant was entitled to have them charged.

We are of the opinion that the judgments of the court below should be affirmed.

*For affirmance*—THE CHANCELLOR, TRENCHARD, PARKER, LLOYD, CASE, BODINE, BROGAN, HEHER, WELLS, KERNEY, JJ. 10.

*For reversal*—DONGES, KAYS, HETFIELD, JJ. 3.