120 N.J. Super. 105 (1972)
293 A.2d 419
NANCY H. HILLAS, AS EXECUTRIX OF THE ESTATE OF GLADYS KOCHER, PLAINTIFF-APPELLANT
v.
WESTINGHOUSE ELECTRIC CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY AND/OR WESTINGHOUSE ELECTRIC CORPORATION, ELEVATOR DIVISION, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 10, 1972.
Decided July 13, 1972.
*108 Before Judges COLLESTER, MINTZ and LYNCH.
Mr. Kenneth J. Fost argued the cause for appellant (Messrs. Stevens & Mathias, attorneys).
Mr. Jared D. Honigfeld argued the cause for respondent (Mr. John W. Taylor, attorney).
MINTZ, J.A.D.
Plaintiff's decedent, Gladys Kocher (decedent) sought recovery for personal injuries resulting from a fall which occurred upon her entering an elevator. The jury returned a verdict of no cause for action, and judgment was entered in favor of defendant. Plaintiff's motion for judgment of liability notwithstanding the verdict or, in the alternative, for a new trial on the ground that the *109 verdict was against the weight of the evidence, was denied. This appeal ensued. Prior to trial decedent died from causes unrelated to the accident. An order was entered substituting her executrix as plaintiff.
Decedent was injured on April 29, 1966 as a result of a fall upon entering an elevator in the School of Nursing connected with Orange Memorial Hospital. At the time of the accident decedent was 68 years of age and was a night house-mother for the School of Nursing. As part of her duties she was required to check the windows and lights in the five-story building known as Mary Austin Hall. Although there is some question as to the floor of the building upon which she entered the elevator, it would appear from decedent's deposition that she was on the fifth floor intending to go down and check the fourth floor when she stepped into the elevator, fell and injured herself.
Prior to her death decedent's deposition was taken and partially read into the record at the trial. Decedent estimated that the floor of the elevator was some eight to ten inches below the level of the floor of the building. There was a light on just outside the elevator and also a light on inside the elevator. Decedent stated that the outside door of the elevator had to be opened manually. She did not remember if the inside gate-type door was open or closed. She did not look to see if the floor of the elevator was level with the landing before she entered, although she had on prior occasions stubbed her foot upon entering the elevator cab.
Apparently the elevator in question was installed about 1928 and contained a manually operated outside door and an inner gate which slid to one side. It was manufactured by A.B. See. However, the hospital had entered into a "Protective Maintenance Agreement" with defendant Westinghouse Electric Corporation (Westinghouse). This agreement was in effect at the time of the accident and required Westinghouse to maintain the elevator equipment, and to repair or replace: "MACHINE, MOTOR, GENERATOR AND CONTROLLER PARTS, including: Worms, Gears, *110 Thrusts, Bearings, Brake Magnet Coils, Brake Shoes, Brushes, Windings, Commutators, Rotating Elements, Coils, Contacts, Resistors, Magnet Frames, and other mechanical parts." [Emphasis supplied]. Excluded from the maintenance agreement were the following items: Shaftway enclosures, shaftway doors, cab floor, cab, car doors, light fixtures, power switches and wiring to controller.
Mr. George Manning, a maintenance man formerly employed by the hospital, testified that he was working on the night of the accident. He stated that while he could replace bulbs and fuses, re-set the overload switch and check the controls in the elevator, he could not perform any repairs upon the elevator and when same were required he called Westinghouse. On April 29, 1966 he first observed decedent sitting in a chair on the first floor, and found the elevator to be several inches below the floor level  about eight inches or more. However, he did not measure the distance. He then took the elevator up several times to all floors. He noted that it stopped erratically at different floors from "six, two, four or any number of inches above or below the level, but never in excess of ten inches or approximately ten inches judging by guess-work." He then closed down the elevator and summoned Westinghouse. He further testified that the elevator had performed erratically on several other occasions and that Westinghouse serviced this elevator on previous occasions for the same problem. Finally, he testified that there was no way to control the movement of the automatic elevator other than to push the floor button.
Plaintiff's expert witness, Frank Hochstrasser, opined that an elevator should not stop more than three inches above or below the landing. He inspected the elevator on October 12, 1970 and was of the view that the erratic leveling was caused by a defect in the slow speed solenoid. What this means is simply that as a button on the control board or hallway panel is pushed, it registers on the board. The solenoid is a magnet which is activated by the selector on the control board. As the selector traverses the board and comes across *111 a registered floor, the fast speed motor is disengaged and the slow speed motor takes over causing the elevator to stop at the correct floor. In his judgment the slow speed solenoid controlled the leveling of the elevator cab and the solenoid in question was defective on April 29, 1966. He based his opinion on certain "call-back slips" dated prior to April 29, 1966 recording the dates of servicing by Westinghouse. From these slips he concluded that the slow speed solenoid was repaired on October 6, 1965 and that there was trouble with the leveling process on June 24, 1965. In his judgment Westinghouse should have discovered the defective solenoid allegedly responsible for the erratic leveling and subsequent accident. Hochstrasser further testified that the elevator cab had to be within seven inches of the landing in order to open the outer door to the elevator.
Defendant's expert, Irving Calamia, its field supervisor of maintenance, testified that the slow speed solenoid has nothing to do with the elevator leveling. He indicated that a passenger could open the inner gate five inches below the landing, stop the elevator, open the outer door and depart from the elevator. However, if the inner gate is opened more than five inches below the landing, the outer door will not open. He further testified that Westinghouse tries to keep the elevator leveling within two inches of the landing and that any greater distance creates a hazard for people entering the elevator. He indicated that the slow speed solenoid was serviced on February 4, 1966 and that on April 14, 1966 the high speed solenoid was adjusted. Significantly, he further testified that on April 24, 1966 (five days before the accident), as a result of an emergency call, the elevator car was shut down. The reason for doing so does not appear in the record.
On appeal several contentions are advanced by plaintiff. We consider the major argument to be that plain error was committed by the trial judge in failing to charge the jury with respect to the doctrine of res ipsa loquitur. The trial judge submitted the case to the jury simply on the single *112 issue of negligence and charged them that it was plaintiff's burden to establish defendant's negligence by a fair preponderance or the greater weight of credible evidence. He further said: "In the absence of such proof there can be no recovery for the mere happening of an accident itself provides no basis for a finding in favor of plaintiff. Negligence in this case must be proved and the burden of proof, as I have said, is upon the plaintiff." Further on in the course of his charge the trial judge stated that: "In order for the plaintiff to prevail you must find that the stoppage of the elevator was due to defendant's negligence and the performance of its obligations under the maintenance contract which is in Evidence [sic]." If in fact the doctrine of res ipsa loquitur is clearly applicable, then the trial judge's charge may have constituted plain error. As observed in Vespe v. DiMarco, 43 N.J. 430, 439 (1964):
We do not believe a trial judge discharges his burden fully when he fails to instruct the jury on the doctrine of res ipsa loquitur and its effect on the case when it is clearly applicable. * * * If in the matter before us the court simply had discussed the facts, defined negligence without referring to res ipsa loquitur, and submitted the issue of negligence of the defendant to the jury, the situation on appeal would be different. In such case, in the absence of a request to charge, there might not be plain error. When, however, the charge not only defines negligence without reference to res ipsa loquitur, but also affirmatively denies plaintiff the benefit of the inference of negligence which the jury may draw, by excluding it from the case, grave disadvantage is visited on him. The burden of offering an explanation of the accident is lifted from the defendant thereby. [Emphasis supplied]
Control of the instrumentality in question is generally held to be essential in order to invoke this principle of law. Jakubowski v. Minnesota Mining and Manufacturing, 42 N.J. 177, 183 (1964). However, it has been said that the proper test of the applicability of the doctrine is whether there is evidence from which the court can find that in the ordinary course of things, the mishap, more likely than not, was the result of defendant's negligence. *113 Francois v. American Stores Co., 46 N.J. Super. 394 (App. Div. 1957). The application of res ipsa loquitur is not precluded when defendant relinquishes control of the instrumentality which causes the accident, provided the instrumentality has not been improperly handled by someone after defendant relinquishes control. Bornstein v. Metropolitan Bottling Co., 26 N.J. 263 (1958). The word "exclusive" when used to define the nature of the control necessary to invoke the doctrine of res ipsa loquitur does not connote that such control must be several, and the defendant singular and never plural. Meny v. Carlson, 6 N.J. 82, 93 (1950).
Whether or not res ipsa loquitur can be applied against an elevator maintenance company engaged to service an automatic elevator is of novel impression in this State. Other jurisdictions have considered this problem and reached varied results. Some jurisdictions have held the doctrine inapplicable due to lack of control by the maintenance company. Adamson v. Westinghouse Electric Corp., 236 So.2d 556 (La. Ct. App. 1970) (proofs showed that the elevator machinery "penthouse" was often unlocked and at times visited by persons other than the maintenance contractors); Bryan v. Otis Elevator, 2 N.C. App. 593, 163 S.E.2d 534 (N.C. Ct. App. 1968) (contract with the elevator maintenance company specifically provided that the elevator was to remain exclusively in the possession, management and control of the owner of the building); Isaacs v. Warren Terrace, Inc., 277 N.E.2d 88 (Ohio Ct. Com. Pl. 1971); Norman v. Thomas Emery's Sons, Inc., 7 Ohio App.2d 41, 218 N.E.2d 480 (Ohio Ct. App. 1966) (elevator maintenance company not shown to have exclusive control of elevator); Parise v. Otis Elevator Co., 100 Ohio App. 200, 136 N.E.2d 113 (Ohio Ct. App. 1954) (evidence indicated that building owner's maintenance men often made repairs on elevator even though a maintenance contract was in effect between defendant and building owner and that the safety devices had been tampered with).
*114 Conversely, other jurisdictions have determined that the elevator maintenance company exercised the requisite degree of control necessary to invoke res ipsa loquitur. Otis Elevator Co. v. Seale, 334 F.2d 928 (5th Cir.1964); Otis Elevator Co. v. Robinson, 287 F.2d 62 (5th Cir.1961); Bond v. Otis Elevator Company, 388 S.W.2d 681 (Texas Sup. Ct. 1965). However, even when the doctrine was applied, it was indicated that if there was proof of the real possibility that other forces could have caused the elevator malfunction, then the doctrine is inapplicable. Otis Elevator Co. v. Seale, supra. Finally, in Smith v. Jay Apartments, Inc., 33 A.D.2d 624, 304 N.Y.S.2d 737 (Sup. Ct. App. Div. 1969) the court held the doctrine applicable to the elevator maintenance company even though it was not in exclusive control of the elevator at the time of the accident. The elevator had stopped below the level of the landing. A passenger entered the elevator, fell and was injured. However, that elevator was designed so that the outside door would not open unless the elevator was level with the landing. Thus, that situation is readily distinguishable from the matter before us. Here the A.B. See elevator was designed so that the outer door could be opened manually when the elevator was within five or seven inches of the landing.
The rationale employed by the majority of other jurisdictions is consistent with our law that res ipsa loquitur is inapplicable where the injured party fails to exclude other possible causes of the injury. Jakubowski v. Minnesota Mining and Manufacturing, supra.
The generally accepted view is that res ipsa loquitur is inapplicable as to manually-operated elevators because of lack of control. Otis Elevator Co. v. Yager, 268 F.2d 137 (8th Cir.1959); Dorsey v. General Elevator Co., 241 Md. 99, 215 A.2d 757 (Md. Ct. App. 1966); Sullivan v. Isadore Rosen & Sons, Inc., 36 A.D.2d 809, 320 N.Y.S.2d 197 (Sup. Ct. App. Div. 1971). See also Anno: Applicability of res ipsa loquitur doctrine in nonautomatic elevator accident cases, 56 A L.R. 2d 1059, 1070 (1957).
*115 Although in the instant situation the elevator is automatically operated, the testimony indicates that a passenger can stop the elevator by opening the inner gate at a distance of five or seven inches below the landing sill. In that event the outer door may be opened. We are mindful that plaintiff testified that she estimated the elevator to be eight to ten inches below the floor level when she entered same. However, as already noted, this was merely her estimate and as she indicated, she did not have a tape measure with her at the time of her fall. In these circumstances we do not perceive that the principle of res ipsa loquitur is clearly applicable. Vespe v. DiMarco, supra, is factually distinguishable. Moreover, we note that in Vespe the trial judge aggravated the error by charging the jury with respect to unavoidable accident.
We note that the pretrial order and the several requests to charge submitted by plaintiff failed to mention the doctrine of res ipsa loquitur. Furthermore, no objection was taken to the failure of the trial judge to give said instructions. As noted by our Supreme Court in State v. Macon, 57 N.J. 325, 333 (1971):
In any event, except in extraordinary circumstances, a claim of error will not be entertained unless it is perfectly clear that there actually was error. In other words, if upon a timely objection a different or further record might have been made at the trial level, and the claim of error might thereby have been dissipated, we will neither reverse on an assumption that there was error nor remand the matter to explore that possibility. [Emphasis supplied].
Under the stated circumstances we perceive no plain error on the part of the trial judge in failing to charge the jury with respect to the doctrine of res ipsa loquitur. Cf. Mockler v. Russman, et al., 102 N.J. Super. 582, 590, 591 (App. Div. 1968), certif. den. 53 N.J. 270 (1969), where the court held it was not plain error to fail to charge res ipsa loquitur. In Mockler the court's charge did not exclude from the jury's consideration any inferences of negligence which might be drawn from the facts. Defendant offered evidence in explanation *116 of the cause of the accident, and no request was submitted to the court to charge the doctrine of res ipsa loquitur.
Plaintiff further contends that a contractor who assumes a duty to service and maintain an elevator operates under the same obligations and liabilities as those imposed upon a manufacturer. It is argued that in the circumstances here presented, the doctrine of breach of warranty or strict liability in tort was applicable and that the trial court improperly excluded these issues from the jury's consideration. As already noted, Westinghouse did not manufacture nor install this elevator. It merely serviced it. We have not been referred to any decisional authority that predicates liability upon a service company (who is not the manufacturer) on any theory other than negligence in the performance of its duties. Santor v. A & M Karagheusian, Inc., 44 N.J. 52 (1965) is clearly inapposite. In that case defendant was the manufacturer of the defective carpeting which was sold by the retailer to plaintiff. The court concluded that there was a breach of implied warranty of reasonable fitness and also that under the theory of strict liability in tort proof of the manufacturer's negligence in making or handling of the article is not required. Suffice it to say that the liability of a service company cannot be equated with that of the manufacturer of the product. Likewise, Newmark v. Gimbel's Incorporated, 54 N.J. 585 (1969) is distinguishable for in that case liability was sustained because of a combination self-service function by defendant. The court there indicated that there was an implied warranty of fitness of the permanent wave solution applied by the beauty parlor operator to plaintiff's hair.
Additionally, plaintiff contends that as a matter of law the trial judge should have instructed the jury on the duty to inspect and test the elevator. The jury had before it the maintenance contract and in reviewing that document could determine the negligence, if any, on the part of Westinghouse in the performance of its obligations under that contract.
*117 Plaintiff further argues that the trial judge inaccurately and prejudicially charged the jury that it had to find "that the stoppage of the elevator was due to defendant's negligence and the performance of its obligations under the maintenance contract which is in Evidence [sic]." [Emphasis supplied]. We think that the use of the word "and" on the part of the trial judge was inadvertent and could easily have been corrected had it been drawn to the attention of the trial judge. However, it was not, and we perceive no plain error in this respect.
Plaintiff further argues that the trial court's refusal to instruct the jury to disregard evidence that workmen's compensation benefits were paid decedent constitutes reversible error. We disagree. The testimony with respect to workmen's compensation benefits occurred in two fleeting instances in the testimony of two medical experts. Plaintiff's medical expert casually referred to decedent as "a compensation case" and defendant's medical expert casually mentioned that decedent was admitted to the hospital "as a compensation case." No objection was taken by plaintiff to either of these casual references and no motion made to strike the same. In any event, the request to charge concerning the collateral source rule related only to the question of damages. Since the jury never reached that point because it found a verdict of "no cause for action," there was obviously no prejudicial error committed.
Plaintiff further contends that the trial court erred in permitting Mr. Calamia to testify as to whether the slow speed solenoid could affect leveling of the elevator. In answers to interrogatories, Mr. Calamia was named only as a factual witness. He was not named as an expert witness nor was his report furnished to plaintiff. Nevertheless, his deposition was taken prior to trial and full inquiry made respecting his experience and his expertise on the subject of elevators. In the course of that deposition Mr. Calamia referred to the solenoid and its effect upon the operation of the *118 elevator. Plaintiff was not surprised by this testimony and there was no error on the part of the trial court in permitting Mr. Calamia to testify as an expert for defendant.
We do not believe that the jury verdict is against the weight of the evidence and constitutes a manifest denial of justice within the test prescribed by Dolson v. Anastasia, 55 N.J. 2 (1969).
Finally, plaintiff argues that cumulative error warrants reversal of the judgment below. We find no merit to this contention.
Affirmed.