266 N.J. Super. 662 (1993)
630 A.2d 402
ELIZABETH L. ALLENDORF, PLAINTIFF-APPELLANT-CROSS-RESPONDENT,
v.
KAISERMAN ENTERPRISES, DEFENDANT-RESPONDENT, AND AMTECH RELIABLE ELEVATOR COMPANY AND AMERICAN BUILDING MAINTENANCE INDUSTRIES, INC., DEFENDANTS-RESPONDENTS-CROSS-APPELLANTS, AND DOVER ELEVATOR COMPANY, ET AL., DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Submitted November 24, 1992.
Decided August 4, 1993.
*665 Before Judges ANTELL, DREIER and SKILLMAN.
Daniel B. Zonies, attorney for appellant-cross-respondent.
Pennington & Thompson, attorneys for respondents-cross-appellants (George A. Amacker, on the brief).
Kunzman, Coley, Yospin & Bernstein, attorneys for respondent Kaiserman Enterprises (Stephen O. Davis, on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
*666 In this personal injury negligence action, Elizabeth L. Allendorf (plaintiff) was struck and injured by the automatic door of a self-service elevator in an office building owned and operated by defendant Kaiserman Enterprises (Kaiserman), which contracted with defendant Amtech Reliable Elevator Company/American Building Maintenance Industries, Inc. (Amtech) for the maintenance and repair of its elevators. Before trial, the trial court dismissed plaintiff's punitive damage claims against Kaiserman and Amtech. Subsequently, the court bifurcated the issues of liability and damages. In the liability trial, a jury found Amtech negligent and Kaiserman and plaintiff not negligent. In the damages trial, a second jury returned a verdict of $25,000 in plaintiff's favor.
Amtech appeals from the order memorializing the verdict in the liability trial and plaintiff appeals from the court's order dismissing her claims for punitive damages and from the jury verdict in the damages trial.

I
On its appeal, Amtech argues that the trial court erred in submitting a res ipsa loquitur instruction to the jury. To place this issue in context, it is necessary to outline briefly the relevant evidence presented at the liability trial.
The elevator in which plaintiff was injured had two door safety devices: (1) a rubber safety edge running along the side of the door, which was designed to immediately reopen the door if it contacted any object while the door was closing, and (2) an electric eye in the side of the door, which was designed to immediately reopen the door if the electric beam emitting from the eye was broken by any object in the beam's path while the door was closing.
On July 5, 1986, an Amtech service mechanic was dispatched to Kaiserman's building because a moving company left a large *667 rubber "anti-skid device" wedged under the bottom of the elevator door, which was not allowing it to close. The service mechanic discovered that the rubber safety edge on the elevator door had been bent by an object wedged underneath it. Therefore, he straightened out the safety edge "as best as [he] could." At the same time, he tried to readjust the electric eye so that it would not be activated by the bend in the rubber safety edge. The service mechanic felt that both safety devices were "functional" when he left Kaiserman's building on July 5, 1986.
Around 9 a.m. on July 24, 1986, the day of the accident, Amtech received a call from Kaiserman reporting that the elevator door "keeps getting stuck." Consequently, Amtech dispatched a service mechanic to the Kaiserman building. However, the service mechanic's work sheet indicated that he had been sent to the Kaiserman building to perform "routine maintenance" rather than in response to a "trouble call." Although the service mechanic had no specific recollection of this assignment, he asserted that routine maintenance would include a check of the elevator door's safety systems and that if there had been a problem with either system he would have recorded it on his work sheet. Moreover, he would have taken the elevator out of service if he could not repair the system. The service mechanic's work sheet did not indicate a problem with any of the elevator's systems.
Plaintiff's accident occurred only a few hours later, around 2 p.m. According to plaintiff, she was entering the elevator behind her two-year-old daughter when the door "closed" upon her and "pinned" her against the door frame, half in and half out of the elevator. The door did not give at all, pushing her with increasing pressure against the wall. Finally, as the elevator made a grinding noise indicating that it was about to move, plaintiff was able to push through the door into the elevator.
Amtech sent another service mechanic back to the Kaiserman building shortly after the accident. He reported that the rubber safety edge was operating but that the electric eye was inoperative.
*668 Plaintiff presented an expert in the field of professional engineering who expressed an opinion based on his review of Amtech's service records and other evidence developed in discovery that the electric eye safety device was known to be out of service for a long enough time prior to the accident to have been repaired. He further testified that the elevator was generally in a poor state of repair during the period prior to plaintiff's accident.
We are satisfied that this evidence provided a sufficient foundation for the court to submit a res ipsa loquitur instruction to the jury. In Brown v. Racquet Club of Bricktown, 95 N.J. 280, 288-92, 471 A.2d 25 (1984), the Court explained the res ipsa loquitur doctrine as follows:

Res ipsa loquitur, a Latin phrase meaning "the thing speaks for itself," is a rule that governs the availability and adequacy of evidence of negligence in special circumstances. The rule creates "an allowable inference of the defendant's want of due care" when the following conditions have been shown: "(a) the occurrence itself ordinarily bespeaks negligence; (b) the instrumentality [causing the injury] was within the defendant's exclusive control; and (c) there is no indication in the circumstances that the injury was the result of the plaintiff's own voluntary act or neglect."
....
[A] plaintiff need not exclude all other possible causes of an accident as a condition of entitlement to the doctrine, provided he can show that it is more probable than not that the defendant's negligence was a proximate cause of the mishap. As long as the facts permit a reasonable inference that defendant's control over the instrumentality under the circumstances was such that some act of negligence on its part was a contributing cause of the resulting accident, an explanation dissipating separate inferences of different acts of negligence by defendant or others does not defeat the application of res ipsa loquitur.

[Citations omitted.]
To the same effect, the Court in Vespe v. DiMarco, 43 N.J. 430, 437, 204 A.2d 874 (1964), quoting Rose v. Melody Lane of Wilshire, 39 Cal.2d 481, 247 P.2d 335, 339 (1952), stated that "[t]he doctrine of res ipsa loquitur concerns a type of circumstantial evidence upon which plaintiff may rely to discharge his burden of proving defendant's negligence." See also Eaton v. Eaton, 119 N.J. 628, 637-42, 575 A.2d 858 (1990).
*669 The condition for application of the res ipsa loquitur doctrine that the "instrumentality" causing the injury must have been within the defendant's "exclusive control" can be satisfied even though the instrumentality was "in joint control of two defendants in which event the doctrine of res ipsa loquitur will apply against both of said defendants." Meny v. Carlson, 6 N.J. 82, 94, 77 A.2d 245 (1950). "The word `exclusive' when used to define the nature of the control necessary to invoke the doctrine of res ipsa loquitur does not connote that such control must be several and the defendant singular and never plural." Id. at 93, 77 A.2d 245; accord Hillas v. Westinghouse Electric Corp., 120 N.J. Super. 105, 113, 293 A.2d 419 (App.Div.), certif. denied, 62 N.J. 82, 299 A.2d 80 (1972); see Smith v. Claude Neon Lights, Inc., 110 N.J.L. 326, 330-32, 164 A. 423 (E. & A. 1933) (application of res ipsa loquitur warranted in a situation where both the building owner and the company hired to maintain an illuminated electric sign on the roof of the building had "partial possession and control" of the sign when a smaller sign attached by the maintenance company fell injuring plaintiff).
If the evidence presents a factual issue as to how an accident occurred, and the res ipsa loquitur doctrine would be applicable under only one version of the accident, the court should give a "conditional" res ipsa loquitur instruction, under which the jury is directed first to decide how the accident happened and to consider res ipsa loquitur only if it finds that the accident occurred in a manner which fits the doctrine. Terrell v. Lincoln Motel, Inc., 183 N.J. Super. 55, 59-61, 443 A.2d 236 (App.Div. 1982).
If the jury accepted plaintiff's version of how the accident occurred, this was an appropriate case for application of the doctrine of res ipsa loquitur. Certainly, an automatic door closing like a vise upon a person attempting to enter an elevator is an occurrence, similar to the collapse of the stairway involved in Brown v. Racquet Club of Bricktown, supra, which bespeaks negligence. Cf. Rose v. Port of N.Y. Auth., 61 N.J. 129, 136, 293 A.2d 371 (1972) ("Members of the public passing through automatic *670 doors, whether in an airport, office building or supermarket do so generally without sustaining injury."). Also, the jury could reasonably have found that Kaiserman and Amtech were in joint exclusive control of the elevator around the time of the accident. And there was no indication that the elevator malfunction was the result of plaintiff's own voluntary act or neglect.
The trial court properly instructed the jury that the application of the res ipsa loquitur doctrine was conditional upon the jury accepting plaintiff's version of how the accident occurred:
You may recall that I have said to you that the mere happening of an accident itself provides no basis for liability, and that liability must be proven. And in the ordinary negligence case, the mere fact that an accident happened, with nothing more, does not furnish evidence that it was caused by anyone's negligence.
The plaintiff must point to a negligent act or omission on the part of the defendant or defendants. However, sometimes, under certain circumstances, the very happening of an occurrence itself, can be indicative of negligence. Therefore, if you find, number one, that the accident or incident took place as testified to by the plaintiff, under circumstances which would suggest that in the ordinary course of events, it would not have happened without a lack of due care by one or both defendants. And, number two, at the time of the accident, defendants or one of them, had exclusive control or management of the accident  of the elevator, causing the accident.
Number three, and there is no evidence the mishap is attributable to the plaintiff's own voluntary act or neglect. Then, if you find those three, you may find that the accident and the resulting injury were the result of the negligence by defendants or one of them.
Now you will note that I say that you may so find; you are not compelled or required to so find. You should in this regard consider all the facts and circumstances of this case in evidence, including any evidence which the defendants have offered to negate this explanation, or to show that it is not applicable.

[Emphasis added.]
Amtech argues that Hillas v. Westinghouse Electric Corp., supra, 120 N.J. Super. at 111-16, 293 A.2d 419, holds that the doctrine of res ipsa loquitur may not be applied to a company responsible for the maintenance of an automatic elevator. However, the plaintiff in Hillas never requested a res ipsa loquitur instruction, so the only question on appeal was whether the trial court's failure to give that instruction was "plain error," which the court said should turn on whether "the principle of res ipsa *671 loquitur is clearly applicable." The court concluded that the doctrine was not "clearly applicable" because there was evidence that another elevator passenger could have created the condition which caused plaintiff's accident. In contrast, plaintiff in this case obtained a res ipsa loquitur instruction and there was no evidence that the malfunction of the elevator as described by plaintiff could have been caused by any party other than defendants.
We also reject any broad rule that the doctrine of res ipsa loquitur may never be applied to an elevator maintenance company. The application of res ipsa loquitur should not turn on the nature of a business enterprise conducted by a defendant but rather upon the circumstances of the specific accident which is the subject of a suit. As the court noted in Hillas, "the proper test of the applicability of the doctrine is whether there is evidence from which the court can find that in the ordinary course of things, the mishap, more likely than not, was the result of defendant's negligence." Id. at 112. Accordingly, the courts in other jurisdictions have held that the doctrine of res ipsa loquitur may be applied to an elevator maintenance company if plaintiff presents sufficient evidence of the company's control over the elevator. See, e.g. Rogers v. Dorchester Assocs., 32 N.Y.2d 553, 347 N.Y.S.2d 22, 26, 300 N.E.2d 403, 407 (1973); Carney v. Otis Elevator Co., 370 Pa.Super. 394, 536 A.2d 804 (1988); Johnson v. Otis Elevator Co., 225 Pa.Super. 500, 311 A.2d 656, 657 (1973); see generally John D. Perovich, Annotation, Liability of Installer or Maintenance Company For Injury Caused By Door of Automatic Passenger Elevator, 64 A.L.R.3d 1005 § 4 at 1011-1013 (1975); John D. Perovich, Annotation, Liability of Installer or Maintenance Company for Injury Caused By Failure of Automatic Elevator To Level At Floor, 63 A.L.R.3d 996 § 5 at 1005-1006 (1975).
Amtech not only agreed to "regularly and systematically examine" and "maintain" the elevator and its "safety devices," but had in fact sent one of its employees to the Kaiserman building only a few hours before the accident to service the specific elevator which caused plaintiff's injuries. Therefore, Amtech's connection with *672 the elevator which caused plaintiff's injury was sufficiently immediate and direct to support a finding that it had "control" of that elevator, and thus the trial court correctly concluded that the doctrine of res ipsa loquitur was applicable.

II
Amtech also argues that (1) plaintiff did not establish any negligence on the part of the defendant Amtech; (2) plaintiff's expert's opinion was a "net opinion" and therefore inadmissible; (3) in finding for defendant Kaiserman and against Amtech, the jury's verdict was contrary to both the law and instructions; (4) the conduct of plaintiff and counsel for plaintiff may have improperly influenced the jury; (5) plaintiff's liability expert was improperly allowed to testify; and (6) the court improperly allowed evidence of prior accidents and the functioning of the elevator to be presented to the jury. These arguments are clearly without merit and do not require discussion. R. 2:11-3(e)(1)(E).

III
On her appeal, plaintiff argues that the trial court erred in denying her motion to strike all testimony elicited by defendants regarding several occasions when she passed out prior to the accident. Plaintiff presents a similar argument regarding defendants' evidence of the histories of her sisters having passed out. According to plaintiff, defendants failed to present expert testimony that these medical histories tended to show either that plaintiff's alleged accident-related "seizure disorder" was not caused by the accident or that it existed before the accident.
A party seeking to present evidence of a prior injury or condition relating to an issue of medical causation must show that the evidence has some "logical relationship to the issue in the case." Paxton v. Misiuk, 34 N.J. 453, 460, 170 A.2d 16 (1961). Moreover, this logical relationship generally must be established by appropriate expert medical opinion. See Ratner v. General *673 Motors Corp., 241 N.J. Super. 197, 203-06, 574 A.2d 541 (App.Div. 1990). The general test of admissibility of such evidence is "one of possibility rather than probability." Paxton v. Misiuk, supra, 34 N.J. at 461, 170 A.2d 16.
Defendant satisfied these requirements through the testimony of Dr. Raquel E. Gur, a neuropsychiatrist:
Q. Doctor, you were asked about past history of Lisa Allendorf. Were you aware that she had complaints of passing out before the accident in July of 1986?
A. No.
Q. Were you aware that she complained of a chest pain problem which was very severe chest pain that I think she indicated was like a heart attack, she had difficulty breathing and she would either pass out or come close to passing out, this was before the accident in July of '86; were you aware of that?
A. No.
Q. Would that change your opinion any concerning the seizure disorder that she has alleged?
A. If you recall, when Mr. Zonies described the behavior that Ms. Allendorf presented, I was saying, I would see something like that and I believe every physician in practice will do, you get a differential. And I said this is a type of behavior, syncopal, passing out could be related to heart, could be related to brain, could be related to pulmonary, I mentioned toxic abuse, et cetera. You have to go through all of them.
If I know and based on the information that you provided which I was not aware of with the details that you gave me on the behavior observed, I said that the possibility of seizure based on this behavior described is now moving higher in my list and I will be more aggressive in checking out, getting to the bottom of it with the information that you provided on passing out. That's a possibility. I would even say cardiac possibility will apply. I will pursue it further. And remember I said in a young person after a routine exam, cardiac examination, I wouldn't have pursued it that much. If there was expressed pain, I would check a little bit more in the family story and so this was moving upper and higher in the list for cardiac. So, I would have pursued both work ups at the same time in order not to be negligent.
Q. Did Lisa Allendorf tell you that her sister, one of her sisters was passing out and has passed out on occasion?
....
THE WITNESS: I did not have  no, she did not provide me with this information. When I investigated family story, I asked about family story, I asked if there's any medical, neurological or psychiatric history in the family which could be pertinent many times in the evaluation of an individual. She said, no.
Q. Would the fact that her sister passes out on occasion be of any significance to you?

*674 A. Yes.
Q. Why is that?
A. It might be significant relating to cardiac disease and it might also be significant, as I said, in the differential of passing out or in the terminology syncope, a seizures disorder is in the differential. Seizures sometimes run in families, pseudoseizures, namely behavior that is consistent with seizure but no electrical changes in the brain runs in families, too. In other words, research has shown that people have pseudoseizures if somebody in the family has a history of passing out which they have observed is a higher proportion. That's all.
Q. Concerning the pseudoseizures you just mentioned, would the fact that the sister passing out have been contributed to mitral valve prolapse or a female problem be of any significance to you?
A. I think that every piece of information is important. The mitral valve prolapse would point to the cardiac origin for that and then I would have pursued more aggressively a cardiac workup in a young person.
In addition, the evidence that plaintiff had episodes of passing out prior to the accident was admissible for the purpose of impeaching the credibility of her testimony that she was "in perfect health" and had never had "any problem with blacking out" prior to the accident. Evid.R. 20; see also Evid.R. 607, effective July 1, 1993.
Plaintiff also argues that Amtech improperly suggested that she suffered from "mitral valve prolapse." However, this condition was referred to in a medical history given by plaintiff which she offered in evidence. In any event, plaintiff testified that her sister suffered from mitral valve prolapse and that while she may have speculated that she too suffered from this condition, this was never confirmed by any test or doctor's diagnosis. One of plaintiff's medical experts confirmed that "there is no documentation of a mitral valve prolapse" and that she had "a normal echocardiogram." In light of these explanations of plaintiff's reference to "mitral valve prolapse" in her medical history, the trial court's failure to instruct the jury that there was no competent evidence she actually suffers from this condition did not have a clear capacity to lead to an unjust result. R. 2:10-2; Bussell v. DeWalt Prods. Corp., 105 N.J. 223, 231, 519 A.2d 1379 (1987).

*675 IV
Plaintiff argues that the trial court erred in granting defendants' summary judgments with respect to her punitive damage claims.
As the court indicated in Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 49, 477 A.2d 1224 (1984):
To warrant a punitive award, the defendant's conduct must have been wantonly reckless or malicious. There must be an intentional wrongdoing in the sense of an "evil-minded act" or an act accompanied by a wanton and wilful disregard of the rights of another.
Plaintiff failed to present any evidence from which a jury could have found that Amtech's conduct was wantonly reckless or malicious. Plaintiff presented no evidence that Amtech was aware that the elevator had previously caused an injury or that it was malfunctioning in a manner which made it probable that someone would suffer injury. Plaintiff's evidence did no more than establish Amtech's negligence in maintaining the elevator.
We also conclude that plaintiff's evidence fell short of establishing a basis upon which a jury could find that Kaiserman had acted in a wantonly reckless or malicious manner. Although Kaiserman was aware of a prior accident on July 11, 1986, which caused injury to another person using the elevator and also possessed an inspection report dated July 9, 1986, which indicated that the electric eye was not operating, this evidence would not support a finding that Kaiserman intended someone to be injured in its elevator or that it was aware there was a high probability of injury. To the contrary, the uncontradicted evidence was that the elevator appeared to be functioning adequately except when the prior accident occurred on July 11, 1986 and when the elevator became stuck on the morning of July 26, 1986. Moreover, Kaiserman did not simply ignore the problems with the elevator but instead called Amtech to service it.
In addition, we note that plaintiff presumably presented whatever evidence she had of Kaiserman's alleged wrongdoing at trial and that the jury found this evidence insufficient to establish that *676 Kaiserman was even negligent. It follows a fortiori that this evidence would have been insufficient for the jury to find that Kaiserman's conduct was malicious or wantonly reckless. See Edwards v. Our Lady of Lourdes Hospital, 217 N.J. Super. 448, 460-63, 526 A.2d 242 (App.Div. 1987) (conduct which is more culpable than ordinary negligence is essential to a successful claim for punitive damages).
Affirmed.