**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4914-14T1

JUSTO LOPEZ, JR. and
EVELYN LOPEZ, h/w,

    Plaintiffs-Appellants,

v.

MICHAEL A. TETI,

    Defendant-Respondent,

and

VINCENT TETI,

    Defendant.

_____

Argued April 26, 2017 — Decided June 5, 2017

Before Judges Alvarez, Accurso and Manahan.

On appeal from Superior Court of New Jersey,
Law Division, Cumberland County, Docket No.
L-953-12.

Edward J. Tucker argued the cause for
appellants (Rosner & Tucker, PC, attorneys;
Tariq H. Chaudhri, on the brief).

Anthony Young argued the cause for
respondent (Parker, Young & Antinoff, LLC,
attorneys; Mr. Young, on the brief).

PER CURIAM

In this verbal threshold case, plaintiff Justo Lopez, Jr. and his wife Evelyn Lopez appeal from a defense verdict and the denial of their motion for a new trial following a trial on damages. They contend evidentiary errors relating to disclosure of prior legal applications and actions by both plaintiffs, as well as defense counsel's improper remarks in summation, resulted in a miscarriage of justice. Because our review of the record convinces us the errors complained of, either singly or in combination, did not deprive plaintiffs of a fair trial, we affirm.

Plaintiffs were rear-ended by a car driven by defendant Michael A. Teti in November 2010. Liability was stipulated and the case went to trial on damages only. Both plaintiffs claimed a permanent injury stemming from the accident, and that it aggravated pre-existing degenerative changes in their necks, shoulders and backs.

The medical experts for both sides agreed that both plaintiffs had degenerative conditions and that both credibly reported suffering pain after the accident. Plaintiffs' experts were of the opinion the pain resulted from the permanent injuries they suffered in the accident and the aggravation of their previously asymptomatic degenerative conditions.

Defendant's expert was of the view that neither plaintiff suffered a permanent injury in the accident and that there was no indication in their diagnostic studies of any post-traumatic cause of their pain. As to Mr. Lopez, defendant's expert conceded the epidural injections and radio frequency procedures he had to manage his pain following the accident were appropriate treatments for someone suffering significant pain, and that none of the treatment Mr. Lopez had was unreasonable. The expert also conceded there was no indication in Mr. Lopez's medical records that he was suffering any pain prior to this accident. Similarly, the expert conceded there was no indication that Mrs. Lopez was having pain or problems in her neck or shoulder prior to this accident.

There was nothing in the record to suggest that either plaintiff had suffered any prior injury to the parts of their bodies they claim were injured in this accident. Instead, the significance of their prior injuries, especially as to Mr. Lopez, was in the effect plaintiffs had previously claimed those injuries had on their lives and activities. Defendant used what plaintiffs had said about the effect of Mr. Lopez's prior accidents on their lives to argue their accounts of how this accident affected them were not credible.

A-4914-14T1

Both sides were aware of the potential that plaintiffs' prior claims could become relevant in this action. Plaintiffs made an in limine motion to bar defendant from referring to Mr. Lopez's Post Traumatic Stress Disorder (PTSD), Lyme's disease or prior knee injury because the defense was without any medical testimony linking those conditions to their current complaints. See Allendorf v. Kaiserman Enters., 266 N.J. Super. 662, 672-73 (1993). Judge Geiger ruled that he would address any such objection on an ad hoc basis because he would "need to know the context before [he could] render a [r]uling." He warned, however, that "if the claim is that as a result of this accident" plaintiffs are not able to do things they would have been doing but for the accident, they could "be opening up a door as to whether these conditions that [they] already suffered from limit [their] abilities in that regard as opposed to this accident."

At trial, one of plaintiffs' experts acknowledged on cross-examination that she was aware Mr. Lopez received disability benefits and was not employed. Mr. Lopez subsequently confirmed he suffered from PTSD and was "on disability." He told the jury he was a "house-husband" responsible for the cooking, cleaning and yard work, which he performs "with pain," except when his

A-4914-14T1

pain was so severe that it prevented him from completing his chores. He testified his cousin helped him occasionally with the yard, but when his cousin was not available, he did the work and "live[d] with the pain."

Defendant also testified he had "always been athletic" and played softball, handball, basketball and lifted weights before the accident. After the accident he claimed he could not do those things. He also claimed he and his wife "used to go out dancing all the time" and to "dinners, shows [and] plays." After his "whole life changed" on the day of the accident, plaintiff claimed they no longer went out dancing or to parties with their friends because he was "in pain a lot."

On cross-examination, defense counsel showed defendant his application for Social Security disability benefits completed several years before the accident. Counsel had defendant read from that document the activities he claimed he no longer participated in because of his PTSD, including, "play[ing] ball, fish[ing], camp[ing], go[ing] to the mall and just hang[ing] out with the wife." Defendant also claimed in that document that before his traumatic event, he "always had a job[,] . . . was a people person[,] . . . [and his wife and he] were always invited

to people's homes."  He wrote "[n]ow it's different" as he no longer enjoyed "being around people."

Defense counsel also questioned Mr. Lopez about a prior knee injury, and whether it had impaired his ability to "do outside chores."  After Mr. Lopez denied it, defense counsel confronted him with his answers to interrogatories in a slip and fall action related to that injury, in which he claimed he paid for lawn care he could no longer perform himself.  The court overruled plaintiffs' counsel's objections to the use of Mr. Lopez's application to Social Security or his interrogatory answers on cross-examination.

Mrs. Lopez testified to her injuries and the effect they had on her ability to "run a quarter million dollar department" at a local hospital.  She claimed that before the accident "it was nothing for [her] to work from 7:00 in the morning until 7:00, 8:00, 9:00, 10:00, 11:00 o'clock.  [Go] home, go back in 3:00, 4:00, 5:00 o'clock in the morning and do another eight, ten hour day."  Following the accident, her physical limitations had led her to conclude she could no longer do the job.

On cross-examination, Mrs. Lopez admitted she worked forty to sixty hour weeks without restriction after the accident and never took any time off on account of her injuries.  Defense

A-4914-14T1

counsel similarly confronted her with her certified answers to interrogatories in the prior action. After the court overruled plaintiffs' objection to use of the document, defense counsel succeeded in having Mrs. Lopez acknowledge she had previously sought compensation for the same loss of household chores and personal relationship with her husband she sought in this action.

Defense counsel also sought to inquire as to whether Mrs. Lopez had complained to her family physician of pain in her neck, shoulder or back after the accident, using the doctor's records. The court sustained plaintiffs' objection to the use of the records in that manner. Defense counsel cured the objection by asking Mrs. Lopez whether she recalled complaining to her doctor about such pain. When she said she could not recall, defense counsel had her review the records to see if they might refresh her recollection. She did so. Counsel then asked the question again. Mrs. Lopez answered, "I don't see anything listed." Defense counsel then wrote on an easel "PCP, 17 pages post-MVA, nothing listed. No complaint." Plaintiffs objected and the court responded the note was "not in evidence" and directed counsel to "[m]ove on."

In his closing argument to the jury, defense counsel's main theme was plaintiffs' lack of credibility. In making his argument, he referred to the statements Mr. Lopez made in his application for Social Security disability benefits and to the answers Mrs. Lopez gave to interrogatories submitted in the action to recover for Mr. Lopez's knee injury. He also focused on the reports of pain in plaintiffs' medical records. The court overruled plaintiffs' objection to defense counsel's rhetorical questions, "Why this pain? Well, pain is a subjective response and why this pain? Is it real pain or is it litigation pain? Because, see, is there an incentive for pain?"

Following the no cause verdict, plaintiffs moved for a new trial claiming defense counsel's repeated reference on cross-examination to Mr. Lopez's "unrelated diagnosis" of PTSD and his receipt of Social Security disability benefits and to Mrs. Lopez's prior loss of consortium claim violated the court's prior order; that defense counsel "published the contents of inadmissible medical records" to the jury in violation of the court's ruling "issued only moments earlier;" and impermissibly accused plaintiffs in summation of suffering from "'litigation pain,' despite the testimony of the defense medical expert in which it was already established that both [p]laintiffs were

A-4914-14T1

found to be credible and that the dispute was as to causation and permanency of the alleged injuries only."

After hearing argument, Judge Geiger denied the motion. In a brief but comprehensive opinion from the bench, the judge summarized the testimony and addressed plaintiffs' claims. He explained that "the credibility of the plaintiffs" was "one of the central issues raised by the defense." The judge recounted that after Mr. Lopez told the jury about his "inability to socialize and . . . loss of enjoyment of life, and [inability] to recreate and do social activities" as before the accident,

> during cross-examination it's brought to light, that as part of his own filings, in the form of his Application for Social Security Disability, based on . . . claimed Post-Traumatic Stress Disorder, that he suffered from the very types of loss of enjoyment of life that he was testifying resulted from this motor vehicle accident.

The judge found plaintiffs had "to expect that if the defense learns of that Social Security Disability Application, that it's going to be a primary focus during a trial."

Judge Geiger further found devastating that the jury "learn[ed] this for the first time on cross-examination, because it wasn't broached, it wasn't discussed, it wasn't raised during direct examination." The judge opined that it was "[p]otent cross-examination, goes to the very heart of his credibility,

with regard to damages. I can't think of a more direct, effective attack than that. It just completely undermines a large portion of his claim for non-economic damages." The judge found that testimony "[c]ouple[d] . . . with the testimony during cross of plaintiff wife, Evelyn Lopez, who also claimed to have suffered permanent injuries [in] the accident" but still managed to run a large department at the hospital, working forty to sixty hours a week, "undermined the [direct] testimony as to damages and disability resulting from this accident."

Regarding defense counsel's comment in summation regarding "litigation pain," the judge found it not "inappropriate in a case with these facts." The judge elaborated:

> You know, this is not a case where somebody gets involved in an auto accident and they have no prior history, and the issue is, well, is it degenerative versus traumatic[.] Here's a claim where the very types of most of the damages that he's claiming, or a significant portion of the damages, were the basis for his Social Security Disability.
>
> It's fair game for defense counsel under those circumstances to refer to it as being litigation pain. And, any reference to the Social Security Application process was really part and parcel of his . . . cross-examination. These were documents . . . that this plaintiff had signed certif[ying] that these items were true when he was applying for Social Security

10

Disability. So, again, I don't think that's
inappropriate.

Noting that the "test for a new trial is very strict," and that
jury verdicts should be set aside "only in cases of clear
injustice," Judge Geiger concluded by finding "I don't think
we're close to that in this case."

Plaintiffs appeal, reprising the same arguments made in
their post-trial motion to Judge Geiger.

Our Supreme Court has instructed "that a motion for a new
trial should be granted only after 'having given due regard to
the opportunity of the jury to pass upon the credibility of the
witnesses, it clearly and convincingly appears that there was a
miscarriage of justice under the law.'" Risko v. Thompson
Muller Auto. Grp., Inc., 206 N.J. 506, 521 (2011) (quoting
R. 4:49-1(a)). In reviewing the grant or denial of such a
motion, an appellate court applies essentially the same
standard, but affords "due deference" to the trial court's "feel
of the case," regarding its assessment of such intangibles as
witness credibility. Jastram v. Kruse, 197 N.J. 216, 230
(2008).

Applying that standard here, and having read the trial
record, we are entirely satisfied that the jury's verdict should
stand. We find no error, much less reversible error, in the

trial court's rulings regarding defendant's use, on cross-examination, of plaintiffs' prior sworn answers to interrogatories and application to the Social Security Administration. We acknowledge the caution that should be employed in making use of such documents to avoid "eliciting and stressing" prior legal claims irrelevant to the issue at hand. See Krug v. Wanner, 28 N.J. 174, 185 (1958). But here, as Judge Geiger noted, the prior claims, and what they said about plaintiffs' credibility, were the precise issue at hand. No Rule, principle of law, or court order barred defendant from attempting to establish that the changes plaintiffs claimed occurred in their lives following this accident were ones they had previously said were the result of other accidents.

As for the reference to litigation pain, we distinguish this case from our recent opinion prohibiting expert opinion testimony on "malingering" or "symptom magnification" in personal injury cases. See Rodriquez v. Wal-Mart Stores, Inc., No. A-4137-14 (App. Div. Apr. 27, 2017) (slip op. at 2). Here, there was no testimony by defendant's expert that plaintiffs were malingering or magnifying their symptoms. Indeed, Judge Geiger, anticipating our ruling in Rodriquez, disallowed

defendant from soliciting any such testimony from his expert on plaintiffs' application in limine.

Accordingly, we are satisfied that Judge Geiger was appropriately sensitive to the prejudice such comments might engender and defer to his assessment that defense counsel did not transgress the bounds of fair advocacy in his closing. Plaintiffs' claim that defense counsel "published the contents of inadmissible medical records" to the jury by his cryptic note scribbled on a pad on the easel in the courtroom is without sufficient merit to warrant discussion here. See R. 2:11-3(e)(1)(E).

The few small and inconsequential errors which occurred during the course of this trial do not amount to cumulative error justifying overturning the jury's verdict. See Pellicer v. St. Barnabas Hosp., 200 N.J. 22, 51 (2009).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4914-14T1