251 F.3d 128 (3rd Cir. 2000)
 THERESA TORMENIA, APPELLEE
v.
FIRST INVESTORS REALTY COMPANY, INC.; JOHN G. TROAST, D/B/A TROAST ENTERPRISES; TROAST WOODBRIDGE ASSOCIATES; SAM HALPERN, D/B/A H & W ASSOCIATES, ALL DOING BUSINESS AS WOODBRIDGE CENTER OFFICE COMPLEX, A PARTNERSHIP; H & W ASSOCIATES, ALL DOING BUSINESS AS WOODBRIDGE CENTER OFFICE COMPLEX, A PARTNERSHIP; JGT MANAGEMENT CO. L.L.C., APPELLANTS
 No. 98-6470
 U.S. Court of Appeals, Third Circuit
 Submitted Under Third Circuit LAR 34.1(a) June 2, 2000
August 09, 2000
 
 1
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY (D.C. Civil No. 96-2620) District Judge: Honorable William G. Bassler[Copyrighted Material Omitted]
 
 
 2
 Harry D. McENROE, Esquire Heim, McEnroe & Urciuoli 12 Vreeland Road Florham Park, NJ 07932, Appellants.
 
 
 3
 John P. Bostany, Esquire Suite 2600 One Gateway Center Newark, NJ 07102, for Appellee
 
 
 4
 Before: Scirica, and Nygaard, Circuit Judges, and Pollak, District Judge*
 
 OPINION OF THE COURT
 
 5
 Pollak, District Judge.
 
 
 6
 On July 20, 1998, in this diversity suit in the District Court for New Jersey, a jury awarded Theresa Tormenia $60,000 to compensate her for injuries suffered after the panels of a revolving door collapsed and struck her body. At trial, Ms. Tormenia claimed that Woodbridge Center Office Complex ("Woodbridge"), the owner of premises on which the door was located, and John G. Troast Management Company ("Troast"), the manager of said premises, negligently failed to maintain the revolving door. Ms. Tormenia further argued that these unreasonable maintenance practices caused the door's malfunction.
 
 
 7
 Appellants Woodbridge and Troast advance three arguments in the present case. First, they allege that the District Court erred in denying them judgment as a matter of law. In particular, appellants assert that Ms. Tormenia failed to present requisite expert evidence to prove that the revolving door accident caused her injuries; they further contend that Mr. Alvin Yorra, Ms. Tormenia's engineering expert, did not show that appellants' negligence caused the door to malfunction. Second, in the alternative, appellants seek a new trial because the District Court erroneously admitted Mr. Yorra's testimony into evidence and because the District Court erroneously presented the jury with a conditional res ipsa loquitur charge regarding Troast's liability. Third, appellants request a remittitur or a retrial on damages because the jury's $60,000 award was not rationally based on the evidence presented. Because we disagree with each of appellants' arguments, we affirm the judgment of the District Court.
 
 Facts
 
 8
 On June 21, 1994, Ms. Tormenia was struck by a revolving door on property that Woodbridge owned and Troast managed. The accident was apparently caused by a successive failure of two of the door's components. First, as Ms. Tormenia tried to pass through the door, its "speed control device"[1] was jammed by a contaminant in the door's oil bath; the contaminant became temporarily lodged in the gears of the speed control device, bringing the revolving door to an abrupt halt. Second, because the door stopped with such force, its emergency "break-away mechanism"[2] released the door panel behind Ms. Tormenia, allowing that panel to swing forward freely even though the rest of the door had stopped. The combination of these events trapped Ms. Tormenia between the door panel in front of her, which had stopped, and the panel behind her, which collided with her body.
 
 
 9
 After the accident, Ms. Tormenia did not seek medical treatment immediately. She visited a chiropractor in reference to back and neck pain five weeks after the accident; she was referred to an orthopaedic surgeon for an examination of her left knee nine months after the accident; and she received arthrosporic surgery on her knee eleven months after the accident.
 
 
 10
 At trial, Ms. Tormenia sought to explain the revolving door's mechanical problems using testimony from Mr. Alvin Yorra, a civil engineer with a master's degree who taught engineering for thirty-two years as an associate professor at Northeastern University. His description of the jammed speed control device and the break-away mechanism essentially matched the account provided supra. Mr. Yorra also explained why he believed that a temporary contaminant, rather than some other source of interference, had caused the accident to occur. After a hearing on his qualifications as an expert, the District Court ruled, in a memorandum opinion dated July 15, 1998, that Mr. Yorra's testimony was admissible.
 
 
 11
 In attempting to explain the medical cause of her injuries, Ms. Tormenia did not present expert testimony. Instead, Ms. Tormenia's own testimony was used to argue that injuries to her left shoulder and right knee were caused by the revolving door panel behind her, which "slammed" her body against the door panel in front of her. Ms. Tormenia asserted that she had been pinned between the two door panels until a building employee pulled the panels apart and allowed her to exit, and she also testified that she had suffered no injury to her knee or shoulder prior to the accident. On cross-examination, appellants' counsel demonstrated that, in her deposition, Ms. Tormenia had described several injuries for which she did not seek compensation at trial, including injuries to her back and neck. Defense counsel also brought the jury's attention to the period of months that elapsed before Ms. Tormenia sought medical care for her knee.
 
 
 12
 In charging the jury, the District Court offered the following conditional res ipsa loquitur instruction:
 
 
 13
 If you find by the preponderance that (1) at the time of the incident the defendant [Troast] had exclusive control of the instrumentality causing the occurrence; (2) that the circumstances were such that in the ordinary course of events the incident would not have occurred if [Troast] had exercised reasonable care; and (3) Plaintiff's voluntary act or negligence did not contribute to the occurrence, then you may, but are not required to, confer [sic] that[Troast] was negligent.
 
 
 14
 Appellants objections to this charge were heard and rejected by the District Court during a charge conference held on July 20, 1998, and in an unpublished post-verdict opinion filed on October 21, 1998.
 
 
 15
 I. Appellants' Motion for Judgment as a Matter of Law
 
 
 16
 A. Causation Evidence Regarding Ms. Tormenias Injuries
 
 
 17
 Appellants' first basis for contending that they were entitled to judgment as a matter of law is their claim that Ms. Tormenia was required to, but did not, present expert medical testimony to prove that her knee and shoulder injuries were caused by the revolving door. Both parties agree that New Jersey law controls this dispute, and both parties similarly agree that New Jersey law does not require expert testimony if the claimed disability is a natural result of the alleged injury. See, e.g., Bushman v. Halm, 798 F.2d 651, 658 (3d Cir. 1986); Kelly v. Borwegen, 230 A.2d 532, 534 (Super. Ct. 1967) (quoting 25A C.J.S. Damages S 162(5)). New Jersey law does require expert testimony, however, in cases where lay jurors confront causation issues that are too complex to be understood without the assistance of specialized expert testimony. See Kelly, 230 A.2d at 534 (holding that expert testimony was necessary to explain how an automobile accident could cause plaintiff's alleged difficulty in sleeping, walking, climbing steps, and breathing, since such pain and suffering were "subjective" and were "not obviously related to an identifiable injury").
 
 
 18
 In the case at bar, the causation argument regarding Ms. Tormenia's injuries seems straightforward: Ms. Tormenia alleged that she was struck from behind by a revolving door panel, her body collided with the door panel ahead of her, and she suffered pain in her knee and shoulder. Ms. Tormenia's contention, that she was injured by being "trapped" between two door panels of metal and glass, assumed a basic understanding that collisions with large objects can inflict physical harm; and such an understanding would appear to lie well within an ordinary juror's common sense and experience. Since no sophisticated medical or psychological theory was required to explain Ms. Tormenia's injury, it would seem that no expert analysis was required under New Jersey law.
 
 
 19
 Appellants counter that expert testimony was necessary in this case because Ms. Tormenia modified the injuries for which she sought recovery--she omitted to mention back or neck injuries at trial that had been described in her pretrial deposition--and because substantial time had passed before Ms. Tormenia sought medical attention for her knee. But both of these arguments seem to relate exclusively to Ms. Tormenia's credibility as a witness, and such issues may not be evaluated in deciding a motion for judgment as a matter of law. See Wittekamp v. Gulf & Western, Inc., 991 F.2d 1137, 1141 (3d Cir. 1993) (holding that judgment as a matter of law may be granted "only if, viewing the evidence in the light most favorable to [the plaintiff] and giving him the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury could reasonably find liability"). Appellants have not explained how Ms. Tormenia's allegations regarding causality, i.e., that her leg and shoulder were hurt by being struck by and trapped in a revolving door, created an issue of such technical complexity that expert testimony was required under New Jersey law.
 
 
 20
 B. Causation Evidence Regarding the Door's Malfunction
 
 
 21
 Applellants also assert that Mr. Yorra's testimony did not prove that appellants' negligence caused the door to malfunction. As explained supra, Mr. Yorra testified that a contaminant temporarily caught in the gears of the revolving door's speed control device caused the door's sudden arrest. Mr. Yorra further testified that the door was not stopped by a broken gear or a slipped pivot because the door functioned properly soon after the accident, which would have been unlikely or impossible if part of the door had broken or slipped out of place. Finally, Mr. Yorra testified that contaminants often enter the oil bath of revolving doors because of inadequate maintenance; the inferences supporting this opinion were corroborated by particular evidence that no maintenance schedule existed for the door that allegedly injured Ms. Tormenia.
 
 
 22
 Appellants argue that, despite the above evidence, "[t]here is no way a jury could determine whether the contaminant entered the gears after remaining in the oil bath for a prolonged period of time due to a lack of maintenance or simply entered the system from outside at some point before the seizure of the door." We disagree. Using preponderance of the evidence as the appropriate burden of proof, the jury was properly allowed to infer, based on Mr. Yorra's testimony, that appellants' negligent maintenance--rather than some coincidental contamination--caused the revolving door's malfunction.
 
 
 23
 Appellants rely on Fedorczyk v. Carribean Cruise Lines, Ltd., 82 F.3d 69 (3d Cir. 1996), for the uncontroversial proposition that mere proof of negligence, combined with conjecture that such negligence might have caused the plaintiff's injury, is not legally sufficient evidence of causation. Upon closer review, however, the case at bar differs substantially from Fedorczyk.
 
 
 24
 Ms. Fedorczyk's suit alleged that, during a cruise line vacation, she returned to her cabin and slipped as she entered her bathtub; Ms. Fedorczyk claimed that her injuries were caused by defendant's failure to provide an adequate quantity of anti-slip material in the tub. On appeal, this court affirmed the district court's grant of summary judgment. Ms. Fedorczyk's bathtub was lined with four strips of anti-slip material, and she conceded that "if she had been standing on any of the four abrasive strips at the time of the accident, she could not establish that [defendant's negligence] was the cause of her injuries." Id. at 74. Based on Ms. Fedorczyk's concession, this court focused exclusively on whether any reasonable basis existed for a jury to decide that Ms. Fedorczyk's feet were, as she claimed, in between the existing strips of anti-slip material, rather than on them. Since no admissible evidence--from Ms. Fedorczyk, her expert,[3] or any other source--emerged to prove where Ms. Fedorczyk's feet stood when she slipped, this court held that Ms. Fedorczyk had not met her burden of production as to causation.
 
 
 25
 The principle properly derived from Fedorczyk is that plaintiffs must present some evidence linking their injuries to appellants' negligence. In Fedorczyk, defendant's alleged failure to cover the bathtub with a reasonable quantity of abrasive material could not be factually linked to the plaintiff's injuries because there was no evidence that Ms. Fedorczyk actually slipped on part of the tub that was not covered. In this case, however, it is undisputed that Ms. Tormenia was struck by the same door that appellants failed to maintain, and Mr. Yorra testified that the particular part of the door which malfunctioned--the speed control device--was the same part that appellants failed to maintain. Moreover, Mr. Yorra explained that the accident was mechanically caused by a contaminant, which he believed was due to appellants' negligent maintenance practices, and he explicitly discredited several alternate theories of how the accident might have occurred.[4] Because this evidence, if credited by a fact finder, would provide an ample evidentiary link between the appellants' misconduct and Ms. Tormenia's injuries, we affirm the District Court's decision denying appellants' motion for judgment as matter of law.
 
 II. Admission of Mr. Yorra's Testimony
 
 26
 Appellants claim that the District Court erroneously allowed Mr. Yorra to testify as an expert.[5] Though we would apply plenary review to a controversy over how the Federal Rules of Evidence should be interpreted, the District Court's decision here did not concern a dispute of legal interpretation. Instead, appellants appear to present a simple challenge to the District Court's decision to admit Mr. Yorra's testimony, and we review such rulings for abuse of discretion. See United States v. Gibbs, 190 F.3d 188, 211 (3d Cir. 1999).
 
 
 27
 First, appellants argue that Mr. Yorra's testimony was unreliable because it was not based on a direct inspection of the door[6] and because it relied, in part, on Ms. Tormenia's account of the accident. However, Rule 702 does not require that experts have personal experience with the object of the litigation in which they testify, nor does it require that experts eschew reliance on a plaintiff's account of factual events that the experts themselves did not observe. In this case, Mr. Yorra relied on Ms. Tormenia's account of her accident, on appellants' interrogatory responses concerning the door's maintenance schedule, and on Mr. Yorra's experience with mechanical devices like those in this case. None of these bases for Mr. Yorra's opinion seems so unreliable that his testimony should have been deemed inadmissible. Whether through contrary expert testimony or cross-examination, appellants possessed ample available means to challenge perceived weaknesses in assumptions underlying Mr. Yorra's testimony. Under the liberal standards of Rule 702, exclusion of such evidence was not required.
 
 
 28
 Second, appellants assert, without further analysis, that "[Mr. Yorra's] opinions were purely personal in nature and consequently devoid of any underlying methodology." The District Court disagreed with this characterization of Mr. Yorra's testimony, and we concur. Upon reviewing the record, Mr. Yorra's testimony appears to have combined general principles of physical science with his own experience pertaining to mechanisms like the revolving door at issue here. On these facially credible bases, Mr. Yorra explained: the function of a speed control device, the function of break-away mechanism, the reasons he believed a contaminant caused the speed control device to jam in this case, and the reasons he believed appellants' negligence caused a contaminant to enter the door's speed control device. None of these explanations seems to represent a conjectural, personal opinion devoid of scientific methodology, and appellants have not adequately explained why they have chosen to characterize them as such.
 
 
 29
 Third, appellants claim that Mr. Yorra lacks adequate credentials to qualify as an expert witness under Rule 702. Although appellants acknowledge Mr. Yorra's extensive experience as a student and professor of mechanical engineering, they assert that his testimony was not admissible because Mr. Yorra has testified in only two prior lawsuits concerning revolving doors. Under the liberal standards of Rule 702, however, the District Court was certainly within its discretion to admit Mr. Yorra's testimony, notwithstanding the fact that most of Mr. Yorra's experience in mechanical engineering concerned areas other than revolving doors and activities other than testifying in lawsuits.
 
 
 30
 Although appellants are correct to note that Mr. Yorra's masters degree in civil engineering and his experience as a professor do not "qualify him to provide expert testimony on any subject associated, however tangentially, with such engineering disciplines," they are incorrect to characterize Mr. Yorra's testimony in this case as "tangential" to his experience. Mr. Yorra has taught courses in many fields of mechanical engineering, and he testified that the scientific principles to prepare his opinion in this case were "based on courses that I've taken, the courses that I've taught. I have expended many years in forensic engineering dealing with these particular subjects. I have had specific cases of revolving doors, I have had generalized mechanical system design cases, I looked over all the applicable codes on the subject." After substantial direct examination and cross-examination regarding Mr. Yorra's credentials and testimony, Mr. Yorra's experience with mechanical devices that employ the same principles at issue here was found sufficient to qualify him as an expert witness. Such a determination was consistent with the requirements of Rule 702, and it certainly did not constitute reversible abuse of discretion.
 
 III. Res Ipsa Loquitur
 
 31
 The standard of review for a district court's jury charge is abuse of discretion. See United States v. Johnson, 199 F.3d 123, 125 (3d Cir. 1999). Appellants argue that the res ipsa loquitur charge was improper in this case because none of the three prerequisites for such a theory of liability was present. See Eaton v. Eaton, 575 A.2d 858, 863 (N.J. 1990) ("[Res ipsa loquitur] depends on... three conditions: (1) the accident... was one which ordinarily does not happen unless someone was negligent, (2) the instrumentality... which caused the accident was under the exclusive control of the defendant, and (3) the... event was not caused... by any... neglect on the part of the injured person.")
 
 
 32
 First, appellants argue that "[t]he res ipsa loquitur doctrine is not applicable where an injured party fails to preclude other possible causes of injury." But this argument does not account for Mr. Yorra's testimony, which specifically considered and rejected possible causes of the revolving door's malfunction that would not have involved negligence. On this basis, we affirm the District Court's determination that Ms. Tormenia had produced sufficient evidence that the accident in her case ordinarily would not have occurred in the absence of negligence.
 
 
 33
 Second, appellants cite Den Braven v. Meyer Bros., 64 A.2d 219 (N.J. 1949), for the proposition that revolving doors are not within the "exclusive control" of their owners and managers. Den Braven, however, involved a young girl who was injured when a revolving door was set into motion; her claim was based on allegations that the defendants had inadequately controlled the speed of persons moving through the door. The New Jersey Supreme Court apparently has not considered a case, such as this one, where a plaintiff's injury was allegedly caused by unreasonable maintenance practices of a revolving door, and language from Den Braven itself supports the District Court's determination that the case at bar is distinguishable: "In order to set the rule[of res ipsa loquitur] in operation `The thing causing the accident must have been under the control of the defendant... at the time of the accident.' While the defendant in this case had the general management of the door itself, nevertheless, the actual control of the movement thereof at the time of the accident was in others who were using it." Id. at 221 (emphasis added). In this case, Ms. Tormenia's injury was allegedly caused by inadequate maintenance of a revolving door's speed control device. Both the speed control device and the door's general maintenance were the exclusive responsibility, and were under the exclusive control, of appellants. The fact that Ms. Tormenia and others pushed the door as they passed through does not alter appellants' exclusive control over the door's internal mechanisms and its requisite maintenance. Cf. Benton v. Stichman, 139 A.2d 412 (N.J. Super. Ct. 1958) (affirming the application of res ipsa loquitur because "[t]he movement of the [railroad] turnstile was part of the mechanism under defendant's sole control. Although plaintiff had to push the stile after depositing her fare, that did not render it free-swinging. It was still controlled by the mechanism.").
 
 
 34
 Third, appellants argue that Ms. Tormenia failed to prove that her own negligence did not cause the accident. Appellants have presented neither evidence nor argument suggesting that Ms. Tormenia was negligent in this case, much less that her negligence caused the alleged accident. More importantly, appellants' argument overlooks the fact that the res ipsa loquitur charge in this case was conditional on the jury's finding that certain predicate facts obtained. Under New Jersey law, as described in Allendorf v. Kaiserman Enterprises, 630 A.2d 402, 405 (N.J. Super. Ct. 1993):
 
 
 35
 If the evidence presents a factual issue as to how an accident occurred, and the res ipsa loquitur doctrine would be applicable under only one version of the accident, the court should give a "conditional" res ipsa loquitur instruction, under which the jury is directed first to decide how the accident happened and to consider res ipsa loquitur only if it finds that the accident occurred in a manner which fits the doctrine.
 
 
 36
 Even if appellants had argued that Ms. Tormenia's negligence caused or contributed to her accident, the District Court followed New Jersey's prescription that such factual issues be left for the jury to decide. Specifically, the District Court's instruction permitted a res ipsa loquitur theory of liability only if, inter alia, "the Plaintiff's voluntary act or negligence did not contribute to the [incident's] occurrence." Since Ms. Tormenia's and Mr. Yorra's testimony support a reasonable inference that any negligence on Ms. Tormenia's part did not cause the accident, the jury's verdict cannot be disturbed based on the District Court's conditional charge. See generally Motter v. Everett & Jennings, 883 F.2d 1223, 1230 (3d Cir. 1989) ("In reviewing the propriety of a jury verdict, our obligation is to uphold the jury's award if there exists a reasonable basis to do so.").
 
 
 37
 Since all three requirements for applying res ipsa loquitur appear to have been satisfied for purposes of a conditional charge under New Jersey law, we find that the District Court did not abuse its discretion in its res ipsa loquitur instruction.
 
 
 38
 IV. The Rational Basis for the Jury's Verdict
 
 
 39
 In seeking a new trial on damages or remittitur, appellants acknowledge that the jury's decision warrants deferential appellate review. In arguing that Ms. Tormenia's $60,000 award "shocks the judicial conscience," appellants rearticulate their positions regarding the reliability of Ms. Tormenia's and Mr. Yorra's testimony and the absence of expert testimony regarding the cause of Ms. Tormenia's injuries. We have already addressed appellants' arguments concerning these issues in the context of appellants' motion for judgment as a matter of law (supra, part I) and their challenge to the admissibility of Mr. Yorra's expert testimony (supra, part II). Even viewed in the aggregate, these arguments are markedly insufficient to justify reducing the jury's damages award.
 
 
 40
 Finally, appellants cite Cochran v. A/H Battery Associates, 909 F. Supp. 911 (S.D.N.Y. 1995), in which damage awards for knee injuries were described as ranging from $15,000 to $400,000, and in which the Cochran plaintiff received $30,000 in an admiralty bench trial. Presumably, appellants would use Cochran's analysis of damage awards to show that the jury's verdict in Ms. Tormenia's was aberrational and extraordinary. The standard of review, however, is not whether the jury's verdict deviates from a discernibly "normal" award in comparable cases, nor whether such deviation would seem well-justified. These matters are the proper concern for bench trials, such as Cochran, in which courts must calculate damages awards in the first instance, but they are not proper justification for courts to revise damage awards, such as this one, that have already been issued by a jury.
 
 
 41
 In the present circumstances, the dispositive legal question is whether, given the evidence presented, the jury's award was so irrational as to "shock the judicial conscience." And in this case, where Ms. Tormenia alleged that she was trapped in a malfunctioning door, that she suffered pain in her knee and shoulder for many months, and that she ultimately had to undergo knee surgery, appellants have not carried their difficult burden. Thus, we affirm the District Court's decision to deny a retrial on damages or a remittitur.
 
 Conclusion
 
 42
 For the foregoing reasons, the District Court's judgment in this case is affirmed.
 
 
 
 NOTES:
 
 
 *
 Honorable Louis H. Pollak, District Judge for the United States District Court for the Eastern District of Pennsylvania, sitting by designation.
 
 
 [1]
 A speed control device is a series of six gears and a brake shoe that are connected to the central axle of a revolving door to prevent the door from rotating above a preset speed.
 
 
 [2]
 A break-away mechanism is a spring and ball that hold a revolving door's panel in its proper place until and unless such significant pressure is applied as may force it loose. The spring presses the ball against an indentation on top of the panel, and the mechanism is calibrated to release, or "break away," so that the door will not trap people inside the building during an emergency.
 
 
 [3]
 Although Ms. Fedorczyk's expert witness testified that the dearth of anti-slip strips had caused her accident, this court found the expert's testimony to be pure speculation, outside the realm of his expertise, and lacking the factual basis necessary for its admission into evidence. Id. at 75.
 
 
 [4]
 Appellants make much of the fact that Mr. Yorra did not conclusively refute the possibility that a contaminant was "recently introduced" into the door's speed control device, such that the accident would have occurred even if appellants had maintained the door properly. Defendants' argument misconstrues the bur den of proof in seeking judgment as a matter of law. Ms. Tormenia is not charged with disproving every theory that would deny recovery. She must merely present sufficient evidence so that a reasonable jury could infer that her version of the relevant events was true. As discussed in the text, we believe Ms. Tormenia accomplished this task in the case at bar.
 
 
 [5]
 Appellants also assert that the District Court erroneously administered their hearing under Rule 104(a), which was intended to probe Mr. Yorra's qualifications as an expert. In particular, appellants claim that time for their cross-examination was limited to 30 minutes (after 30 minutes for plaintiff's direct examination) and that the court "directed counsel to address the issue of the opinions set forth by the expert. Only 10 minutes were afforded for this crucial exercise."
 As a factual matter, appellants are plainly wrong to suggest that the District Court truncated their examination of Mr. Yorra's opinion to 10 minutes. On the contrary, after appellants had spent 20 minutes of their prescribed 30 minute cross-examination pursuing other matters, the District Court encouraged them to spend at least some of the remaining 10 minutes on "this crucial exercise." Moreover, appellants have not shown that any prejudice resulted from the District Court's 30 minute time limit on cross-examination or from its prodding appellants to address particular issues. Thus, we do not consider the standards by which appellate courts should review wrongly implemented Rule 104(a) hearings. Cf In re Paoli R.R. Yard PCB Litig., 35 F.3d 717 (3d Cir. 1994) (reversing a district court's decision not to provide a Rule 104(a) hearing of any kind).
 
 
 [6]
 It appears that Mr. Yorra did inspect the door, but he did so only after having written his expert reports and having given his deposition. The District Court excluded testimony based on this inspection because appellants were not afforded adequate notice that the inspection had occurred.