**TOTAL CONTROL, INC., Plaintiff,**

v.

**DANAHER CORPORATION, et al. Defendants.**

**No. CIV.A. 02–668.**

United States District Court, E.D. Pennsylvania.

Sept. 13, 2004.

568

Barbara H. Kramer Esq., Mitchell A. Kramer & Assoc., Mitchell A. Kramer Esq., Rydel, PA, for Plaintiff.

Herbert I. Rothbart Esq., Chicago, IL, Michael J. Torchia Esq., Semanoff, Ormsby, Greenberg & Torchia, LLC, Jenkintown, PA, Bruce Bellingham Esq. Spector, Gadon & Rosen, PC, Philadelphia, PA, for Defendant.

## EXPLANATION AND ORDER

ANITA B. BRODY, District Judge.

Defendant Danaher Corporation ("Danaher") has submitted a motion in limine to disqualify the testimony of plaintiff Total Control, Inc.'s ("Total Control") expert, Howard J. Gordon ("Gordon"). Gordon was engaged by Total Control to provide an estimate of Total Control's damages caused by wrongful actions of Danaher. (Report of Howard J. Gordon at 1). Relying primarily on financial and business records as well as correspondence and analysis from Total Control's President, Stephen Shultz ("Shultz"), Gordon produced an expert report that calculates, tabulates, and summarizes the unpaid

commissions that Total Control alleges it is owed by Danaher. *Id.*

Federal Rule of Evidence 702, governing the testimony of experts, provides that:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702.

■ The "ultimate touchstone" in evaluating admissibility under Rule 702, is "helpfulness to the trier of fact," *In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 746 (3d Cir.1994), i.e., whether the expert's "specialized knowledge" will "assist the trier of fact to understand the evidence or to determine a fact in issue." *See United States v. Downing*, 753 F.2d 1224, 1235 (3d Cir.1985). The Third Circuit has clarified that Rule 702 "embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir.2003). Under the qualification prong, "the witness must possess specialized knowledge," interpreted to include "a broad range of knowledge, skills, and training." *Id.* Second, to meet the reliability requirement, the testimony "must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his on her belief." *Id.* "Finally, Rule 702 requires that the expert testimony must fit the issues in the case. In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." *Id.*

Danaher argues that Gordon's testimony should be excluded for five reasons: 1) Gordon has not employed "specialized knowledge" in arriving at his conclusions and his testimony will therefore be of no assistance to the jury; 2) Gordon's principles and methods are not reliable; 3) Gordon's testimony is not based on sufficient facts or data; 4) Gordon's testimony will be needlessly cumulative; and 5) Gordon's testimony will cause unfair prejudice.

■ Danaher's primary argument is that while Gordon may possess specialized knowledge in the field of financial analysis, no such knowledge was employed in reaching Gordon's conclusions. Rather, Gordon has simply used basic skills of arithmetic in arriving at his damage calculations. Addition and multiplication, Danaher argues, are skills which are well within the competence of an ordinary lay person, therefore Gordon's testimony will not assist the jury.

■ However, while any individual calculation performed by Gordon may appear simple and straightforward, I find that, as a financial analyst, his ability to present a vast quantity of calculations derived from disparate sources in an understandable format will assist the jury. "[A]n expert can be employed if his testimony will be helpful to the trier of fact in understanding evidence that is simply difficult, [though] not beyond ordinary understanding." *United States v. Downing*, 753 F.2d 1224, 1229 (3d Cir.1985) (quoting S. Saltzburg & K. Redden, *Federal Rules of Evidence Manual* 451 (3d ed.1982)). Moreover, "the courts have taken a liberal approach to the admissibility of expert testimony in instances when a party offers expert guidance to the finder of fact respecting factual issues that arguably fall within the compe-

tence of lay people." *Weinstein's Federal Evidence* § 702.03[2][b] (Joseph M. McLaughlin ed., 2d ed.2004).

■ Second, and in apparent contradiction to its primary argument, Danaher argues that Gordon's testimony is not the product of reliable principles and methods. Yet, Danaher states that "the only principle Mr. Gordon has employed is multiplication." (D. Mot. Disq. Expert Test. at 7). Multiplication, of course, cannot be considered an unreliable method. Danaher instead finds fault with Gordon's failure to rely on additional publications or treatises in forming his opinions. *Id.* at 8. However, Gordon's failure to refer to unnamed treatises and publications does not cast any doubt on the reliability of his straightforward calculations.

■ Third, Danaher argues that Gordon's analysis was not based on sufficient facts or data because he relied excessively on business records provided to him by Schultz. "However, Rule 702 does not require that experts have personal experience with the object of the litigation in which they testify, nor does it require that experts eschew reliance on a plaintiff's account of factual events that the experts themselves did not observe." *Tormenia v. First Investors Realty Co.*, 251 F.3d 128, 135 (3d Cir.2000).

■ Fourth, Danaher appears to argue that Gordon's testimony will amount to needless presentation of cumulative evidence because Total Control's President, Stephen Schultz, is capable of testifying to the same effect as Gordon. While Mr. Schultz was indeed the source of much of the information supplied to Gordon and has performed some similar calculations and tabulations, the precise content of Schultz's testimony is not clear at this point. Moreover, "[e]xpert testimony is admissible if it will simply assist the trier of fact to understand the facts already in the record." *Weinstein's Federal Evidence* § 702.03[1].

■ Finally, Danaher argues that Gordon's testimony will be prejudicial to Danaher because the jury will place undue weight on the testimony as a result of Gordon's expert qualifications. Implicitly, Danaher argues that prejudice stemming from the expert imprimatur substantially outweighs the probative value of the testimony and therefore should be excluded under Fed.R.Evid. 403. However, this potential for prejudice exists with any expert. In fact, because, as Danaher acknowledges, Gordon's methodology is relatively straightforward and understandable, the risk of prejudice seems decidedly lower in this case. Because I find that Gordon's testimony will assist the jury in its understanding of Total Control's claimed damages, and because the risk of prejudice seems small, I find that the probative value of Gordon's testimony is not substantially outweighed by the danger of unfair prejudice and the testimony will therefore not be excluded. Fed.R.Evid. 403.

Defendant's motion is denied.

**AND NOW,** this 13th day of September, 2004, upon consideration of Defendants' Motion in Limine to Disqualify Expert Testimony (Docket # 79), it is hereby **ORDERED** that Defendant's Motion is **DENIED.**