CHARLES PAXTON, PLAINTIFF-APPELLANT, v. HENRY MISIUK, DEFENDANT-RESPONDENT.

Argued December 6, 1960—Decided April 10, 1961.

454

*Mr. Harry Chashin* argued the cause for plaintiff-appellant (*Messrs. Marcus & Levy,* attorneys; *Mr. Harry Chashin,* of counsel).

*Mr. Samuel Doan* argued the cause for defendant-respondent.

The opinion of the court was delivered by

SCHETTINO, J. This is a passenger-automobile negligence case which was retried as the result of a reversal ordered by the Appellate Division. 54 *N. J. Super.* 15 (*App. Div.* 1959). A judgment was entered October 26, 1959 on a jury verdict for $2,000 in plaintiff's favor. An order, dated November 13, 1959, denying a new trial was filed on November 17, 1959. On December 28, 1959 plaintiff filed a notice of appeal. Defendant moved to dismiss plaintiff's appeal on the ground that plaintiff was guilty of evasions of the rules of appellate procedure by not filing the original transcript, by failing to file a brief and appendix within the prescribed time, by filing an abbreviated appendix and by an untimely deposit of security for costs. The motion to dismiss was granted by the Appellate Division upon the completion of the oral argument. Thereafter, we granted plaintiff's petition for certification. 33 *N. J.* 115 (1960). By our direction, this appeal was heard on the merits as well as on the appeal from the order of dismissal.

## I.

We first consider the appeal from the order of dismissal.

Plaintiff's attorney violated *R. R.* 1:30–6(c) with respect to the filing of the transcript. The record is not clear as to just what happened. The court reporter states that he was instructed by plaintiff's attorney to prepare an original and copy of the transcript and was advised that if an appeal was to be taken, the original transcript would be returned to the reporter so that he would be able to file it pursuant to the cited rule. Plaintiff's attorney does not so recall the events. Nevertheless, the original and copy were sent to plaintiff's attorney.

*R. R.* 1:30–6(c) provides in part that if prior to the expiration of the time for appeal, a party requests a transcript of the testimony or of any substantial part or parts thereof, the reporter shall promptly transcribe an original and one first carbon copy thereof, attach his official certifi-

cate to both and then deliver the carbon copy to the party making the request and file the original with the clerk of the trial court. These steps were not taken here. Additionally, this rule provides that if an appeal is thereafter taken, the party to whom the copy of such transcript was delivered shall, upon service of the notice of appeal, file the carbon copy of the testimony, or part or parts thereof, with the clerk of the trial court and simultaneously notify the attorney of every other party of said filing. Again, plaintiff violated the rule for, as stated above, the notice of appeal was filed on December 28, 1959, the briefs and a truncated appendix were filed on March 17, 1960 and the transcript was not filed until March 22, 1960. Plaintiff did not, as of date of motion, March 25, 1960, notify defendant of filing of the transcript.

Plaintiff's counsel explains his failure to have the transcript filed at the time of the notice of appeal by stating that the reporter had omitted to transcribe some three pages of the record. He fails to explain his non-compliance with the notice requirement. Respondent urges that plaintiff's counsel in fact delayed the filing of the transcript in order to extend his time for filing of the brief which in this case, under *R. R.* 1:7–12(a), would have been 30 days after filing of the notice of appeal had the original and copy of the transcript been filed as directed by *R. R.* 1:30–6(c). Although, as we have said, the procedure here employed violates the rule, we are inclined to give plaintiff's counsel the benefit of the doubt as to whether he deliberately sought to evade the mandate of the rule.

Plaintiff's attorney also violated *R. R.* 1:2–10 by not depositing security for costs until March 17, 1960. He explains that he thought no security for costs was required because his client held a judgment for $2,000 from which defendant did not appeal and that he assumed his opponent would consent to a waiver of the deposit as was the practice in their county. The rule calls for the deposit and if counsel believed he should be excused, he should have sought an

agreement from his adversary or a court order. In fact he did post the security prior to receipt of the notice to dismiss.

Lastly, we refer to appellant's violation of appellate rule *R. R.* 1:7–1(f) which states in part:

"[The] appendix * * * shall contain such parts of the record as are essential to the proper consideration of the issues, and which the appellant desires the court to read, including such portions which the *appellant reasonably assumes will be relied upon by respondents in meeting the issues raised.*" (Emphasis added)

A reading of the medical testimony indicates clearly that a great deal of the testimony counsel reasonably should have known to be required was omitted.

▉ Nevertheless, we feel the appeal should not have been dismissed. We have on other occasions dealt with the propensity of some attorneys to ignore the rules of the court. In *Gnapinsky v. Goldyn,* 23 *N. J.* 243, 247–248 (1957), Mr. Justice Weintraub, for the court, said:

"That plaintiff failed to comply with the rules is of course evident, and the reasons given are hardly moving. Where a legitimate basis for further time exists, the proper course is a seasonable application for an extension, and no explanation is advanced for plaintiff's failure to seek one.

The rules of court are designed to expedite litigation and are intended for the equal benefit of all parties. The failure of one side to comply precipitates motions which not only consume the time of the courts and delay justice to other litigants, but as well waste the time of counsel which could be devoted with profit to other matters. There are situations in which relief from the prescribed timetable is warranted, and authority is provided for relaxation of the rule in appropriate cases. *R. R.* 1:27A and 1:27B. But the discretion is to be exercised by the courts and not by the unilateral decision of counsel for one of the parties. By reason of counsel's infraction, defendants were unfairly put to the burden of a motion to dismiss and the subsequent proceedings before us with reference to the motion, none of which has contributed to a solution of the issues which interest the clients.

Although we agree the reasons advanced by plaintiff for failure to comply with the rule do not attract sympathetic response and are mindful of the needless trouble to the other parties, yet we are reluctant to approve the dismissal of an appeal where the brief was in fact filed in response to the motion and before argument thereon. The effect of a dismissal is to impose too great a penalty

> upon a litigant who doubtless was personally blameless. There may be situations in which dismissal is the necessary sanction, but where other measures will fairly adjust such *mesne* controversies a dismissal should not be ordered. Hence we feel constrained to reverse the order of dismissal without costs in this court in favor of plaintiff, and indeed with costs in favor of defendant Goldyn, both in the *Appellate Division* and here, with respect to the motion to dismiss and the review of the order of dismissal."

Appellant here satisfied the rules prior to the motion except as to the truncated record as to which we assume he was willing to meet the objection. We therefore feel we should follow the same course as in *Gnapinsky*.

We add some admonitions about the mounting failures to comply with the rules. We repeat that if it is at all possible, the litigant should not be burdened with his attorney's derelictions. An appropriate step is to impose a counsel fee payable by the offending attorney personally to his adversary, with a direction in the order for filing of proof of payment within a prescribed time, and with the proviso that if the adversary declines to accept payment, as is often the case, payment shall be made to the clerk of the court.

## II.

We next consider the merits of the appeal. Plaintiff seeks a reversal of the trial court's denial of his application for a new trial on the question of damages. He complains of the admission of certain evidence and of the charge to the jury on plaintiff's burden of proof. Neither party disputes the jury's determination of liability. Plaintiff claimed upon the trial special damages of $6,500, consisting of medical expenses of $3,674 and 29 weeks' loss of earnings at about $100 a week. Among the injuries claimed were a luxation or dislocation of the cervical spine in the area of the sixth and seventh cervical vertebrae designated as C–6 and C–7, for which an operation fusing C–5 to C–8 was performed, and almost complete loss of vision of the right eye allegedly resulting from some event during the fusion operation.

The basic facts are not in dispute. On May 14, 1956 plaintiff was a passenger in defendant's automobile. Misiuk's car ran into a utility pole injuring plaintiff. Plaintiff suffered lacerations of the face and, after being taken by ambulance to a hospital, he received emergency treatment of three or four sutures for a cut under the chin. There was evidence plaintiff could not walk because his left ankle was swollen. Plaintiff claimed he was unconscious while in the hospital. Plaintiff stated that upon arrival at his home in Paterson his left arm and shoulder, as well as his ankle, pained him. Shortly thereafter plaintiff was taken to the emergency room of a Paterson hospital where he was given pills for pain. Plaintiff then returned home.

Beginning May 18 plaintiff made weekly visits to Dr. Holmes, a general practitioner. He was treated symptomatically with pills, heat and massage for bruises and contusions. On direct examination the doctor testified that plaintiff complained of pain in the neck, head, shoulder, ribs and left ankle. But on cross-examination he stated his diagnosis to be a sprain of the left shoulder and left ankle without permanent injuries.

Dr. Glicksman, plaintiff's surgeon, took x-rays of plaintiff, the first since the accident, on June 29, 1956. Plaintiff complained of pain in the left shoulder and arm and numbness of certain fingers but did not complain of neck pain. Dr. Glicksman determined plaintiff was suffering from a severe subluxation of the 6th cervical vertebra on the 7th cervical vertebra with jumping of the facets and from pain and numbness resulting from the effects of the subluxation on the roots of the nerves serving the affected areas. He treated plaintiff with physiotherapy, traction and a neck collar for four months. Plaintiff entered a hospital in November 1956 for a spinal fusion of the cervical vertebrae. He was then fitted with a steel brace which he wore constantly until March 1957. Plaintiff testified that he did not suffer pain in the cervical area at any time between the accident and the operation.

Dr. Bluestein, a radiologist, testified for plaintiff that the conditions shown on the June 29, 1956 x-ray of Dr. Glicksman were compatible with an injury on May 14, 1956, but he could not tell exactly when the injury had occurred. He felt that the conditions might be as old as six months. Dr. Glicksman was not certain that the accident had caused the injury but, notwithstanding prior accidents, he did state that a probable causal relationship existed between this accident and the injury.

There was testimony introduced by defendant indicating that the conditions shown in the x-ray were attributable to injuries antedating the present accident. Dr. Immerman, defendant's radiologist, testified that the injury must have occurred at least five to six months previous to the date of the first x-ray on June 29, 1956 and that it was unlikely that the injury occurred only six weeks earlier. Dr. Leone, another radiologist for defendant, found that the injury was at least 12 to 18 months old and that it could have been caused by an accident plaintiff had before 1950.

We now come to the crux of this appeal. Plaintiff was cross-examined as to five prior accidents. His objections to the admissibility of testimony concerning such happenings were overruled upon defendant's representation that the purpose of the inquiry was to show that a lack of causal relationship existed between the present accident and the subluxation and that the previous injuries might be responsible for the subluxation.

██ A plaintiff may be cross-examined as to prior injuries to show that his present physical condition did not result solely from defendant's negligent act, but was caused, wholly or partially, by an earlier accident or pre-existing condition. *Krug v. Wanner,* 28 *N. J.* 174, 185 (1958). For a collection of cases see Annotation 69 *A. L. R. 2d* 593, 597, 598 (1960). Defendant admits, however, that evidence of prior injuries in the absence of a logical relationship to the issue in the case should be excluded. While plaintiff concedes that he may be cross-examined as to prior injuries

for this purpose, he contends that as to each and every prior accident, defendant must prove that the present injury *probably* resulted from each one of such accidents testified to. Defendant, however, contends, and we agree, that the test of admissibility is one of possibility rather than probability and that if each prior accident *could* have caused the injury, the testimony as to that accident is relevant and admissible provided, of course, there is competent proof from which it could be found that the injury was thus attributable to the earlier event.

Cross-examination of plaintiff as to previous physical condition was held proper in *Chicago City Ry. v. Canevin,* 72 *Ill. App.* 81, 92 (*App. Ct.* 1897), where plaintiff, suing to recover for injuries sustained in alighting from a street car, testified on direct that she had suffered and still suffered from pain in her neck, head, and back, which she attributed to the injuries alleged to have been produced by the accident. The court said: "The appellee having attributed her ailments to the injuries received at the time of the accident, appellant had the right to cross-examine her as to matters occurring before the accident which might have caused, or contributed to cause, the suffering of which she complained." The basic limitation is expressed in *Craig v. United Rys. Co. of St. Louis,* 185 *S. W.* 205, 207 (*Mo. Sup. Ct.* 1916), where the court said that defendant had the right to show the extent of the injuries suffered by plaintiff for which she brought her first suit but did not have the right to cross-examine plaintiff with reference to the facts in that suit except insofar as such facts would show plaintiff's injuries sued for in that case. The defendant would be protected from paying for the same injuries by showing the extent of said former injuries, and thus making it possible for the jury to distinguish between the injuries of the latter date, if any, and those involved in the former suit. The Missouri court also limited such examination by stating that plaintiff should not be called upon to present the merits of her former case to the jury in the

trial of this case. See also *Cammarata v. Payton,* 316 *S. W. 2d* 474, 477 (*Mo. Sup. Ct.* 1958), and *Fahey v. Clark,* 125 *Conn.* 44, 3 *A. 2d* 313, 120 *A. L. R.* 517 (*Sup. Ct. Err.* 1938).

The question therefore is whether sufficient connection was shown between the prior accidents and the subluxation to enable the jury to consider whether they *could* have caused the injury. We think there was.

There were five prior accidents. Before 1950 plaintiff slipped on a skid and fell, injuring his back. On July 3, 1950 a heavy casting struck plaintiff in the back, burning him in the area of the left posterior hip. On September 30, 1950 a steel flask fell on the top of plaintiff's head requiring stitches. On April 10, 1951 another but larger steel flask fell on plaintiff's head. On March 26, 1954 a door flew open and struck plaintiff in the back.

As we view the overall testimony of the medical experts, any one of these previous accidents could have caused the subluxation. Dr. Glicksman stated on cross-examination that injuries to the head and back might lead to a subluxation. Dr. Leone testified that each one of these accidents could have produced a jerking movement of the head which might have resulted in a subluxation. The possible connection of these accidents with the injury is fortified by the testimony of defendant's doctors who were of the opinion that the present injury was in existence for at least six months prior to the date of the x-ray and could have occurred before 1950, at the time of the first of the five accidents referred to by defendant.

Moreover, the testimony of plaintiff's failure to complain after the present accident of pain in the area of the subluxation emphasizes the possibility that the condition existed prior thereto. The medical witnesses, including two of plaintiff's, agreed that had plaintiff suffered a severe subluxation in the May 14, 1956 accident, he would probably have been in great cervical pain and would have sought immediate attention for it.

In summary, we hold that the trial court was justified in ruling that the testimony as to the possible effects of the prior accidents was competent and produced a jury question as to whether the subluxation here complained of resulted from the present accident.

On the corollary question as to the amount of damages awarded, the jury's verdict of $2,000 should not be disturbed. Plaintiff concedes that the jury's award would be reasonable if based upon the determination that the subluxation was not due to this accident. In effect, the jury so found.

Plaintiff also complains about the following part of the charge:

"The burden of proof, under our system of jurisprudence, is upon the plaintiff to establish his cause of action to your satisfaction by a preponderance of the evidence. Therefore he must demonstrate, to your satisfaction, that the defendant was negligent, measured by the rules of law, and that the negligence proved was the proximate cause of the injuries and damages complained of."

Plaintiff argues that the words "to your satisfaction" placed a higher burden on plaintiff than is required and also misled the jury. This argument is without merit. Had the court said that negligence must be proved to the jury's satisfaction, omitting the phrase "by a preponderance of the evidence," it would clearly have been error. As we read this part of the charge, the trial court said that the jury must be satisfied that plaintiff has proved by a preponderance of the evidence that defendant was negligent. To avoid ambiguity, the better practice would be to omit the words "to your satisfaction." However, this is not reversible error.

Affirmed with costs in the Appellate Division and in this court to respondent.

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For reversal*—None.