**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4305-18

ARCHANNA RANA,

     Plaintiff-Appellant,

v.

ALLSTATE NEW JERSEY
PROPERTY & CASUALTY
INSURANCE COMPANY,

     Defendant-Respondent.

_____

Argued February 1, 2021 – Decided March 22, 2021

Before Judges Currier and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-1722-17.

Salomao Nascimento argued the cause for appellant (Epstein Ostrove, LLC, attorneys; Salomao Nascimento, on the briefs).

Ryan J. Gaffney argued the cause for respondent (Chasan Lamparello Mallon & Cappuzzo, PC, attorneys; John V. Mallon, of counsel and on the brief; Ryan J. Gaffney, on the brief).

PER CURIAM

In this personal injury claim arising out of an automobile accident, plaintiff Archanna Rana appeals from a May 2, 2019 order for final judgment granted in favor of defendant Allstate New Jersey Property & Casualty Insurance Company following a three-day jury trial. We affirm.

We derive the facts from the testimony elicited at trial. Plaintiff was involved in an automobile accident with another vehicle in March 2016. Because the other car left the accident scene, plaintiff pursued a claim for uninsured motorist benefits against Allstate. She also applied for personal injury benefits (PIP) through Allstate.

Several weeks after the accident, plaintiff sought care from a chiropractor. She was experiencing pain in her neck and low back as well as her shoulders. After several months of treatment, the chiropractor referred plaintiff to an orthopedic surgeon, who sent plaintiff for MRI scans and an EMG, and recommended physical therapy. Plaintiff testified she completed her treatment in October 2016.

In June 2018, plaintiff consulted with Dr. Sheref Hassan for a second opinion regarding her continuing pain in her neck and shoulders. In his subsequent report, he diagnosed plaintiff with bilateral partial rotator cuff tears

A-4305-18

and rotator cuff tendinosis and bursitis. Because the condition was worse in her left shoulder, the doctor recommended left shoulder arthroscopy with a potential need for a similar surgery on the right shoulder. The doctor opined: "[T]he estimated cost of such future treatments including the planned arthroscopic surgery, anesthesia, medications, injections, physical therapy and facility fees is approximately $100,000 per shoulder."

Prior to trial, the parties preserved Dr. Hassan's testimony in a de bene esse videotaped deposition. Defense counsel objected to the doctor's description of the surgery and to his estimation of the surgery costs and requested the court edit the videotape prior to playing it for the jury.

In considering defendant's editing requests, the trial judge stated:

> First and foremost, as far as the doctor talking about his recommendation being that the patient would need or he would recommend surgery on the shoulder, I don't have any problem with that, and I think that . . . can be dealt with by cross, which has, in fact, taken place, and he gave at one point a very brief description of the procedure that he apparently provided to the patient.
>
> However, I have a great deal of difficulty accepting his testimony that talks about this very detailed description of what this surgery would entail, including anchoring.
>
> Now, that's one thing. If the surgery took place, obviously, the doctor can testify to all of that. But the mere fact that he has recommended surgery should not

3

give him the opportunity to tell this jury all of the details of what the surgery would entail.

First and foremost, we don't know what would happen at surgery until the surgery is performed. Anything could happen.

Second of all, it's highly speculative in nature. We don't even know if this person is, in fact, going to have surgery. She saw the doctor one time, has never been back to see him again. . . . And I have no problem with his saying that [he] would recommend . . . surgery. I have no problem with that and no problem with the very beginning where he gives a very brief description of what the surgery would entail. But once he starts going into all of the details . . . concerning anchoring and things of that sort, whatever probative value that would have, which would be highly questionable at this point, simply because it's so speculative in nature as to whether there is even going to be surgery, would be certainly outweighed by the prejudicial impact. Because if the jury starts hearing all of this, it makes the injury sound a lot more severe than it might otherwise be. We don't know what's going to happen.

Now, if the surgery had taken place, that's a totally different story, then he certainly would be permitted to testify to everything that occurred during the surgical procedure. But when you have a doctor who sees the patient one time, has not treated her in any sense of the word, has done nothing, she's never gone back for follow-ups, there is no indication that she is even intending [to] have surgery, for him to go into that kind of detail . . . I have difficulty with that.

I also have difficulty with, and I feel it should not go before the jury, what the cost of this particular surgical procedure would be. It comes out to about $100,000.

4

Well, number one, we don't know if it's going to happen. Number two, we don't know what the actual bill is going to be if it were to happen. Number three, we don't even know what would be boardable. I don't know what would be boardable. Maybe it's going to be covered, maybe it's not going to be covered. But to throw out a figure like that to the jury, at this point, again, for something that may never happen, I think is highly prejudicial, and that should not come in.

In addition, because plaintiff did not have a claim for economic damages, the judge found the cost of the surgery was not relevant.

During the discussion, plaintiff requested the court prohibit references to a prior 2010 motor vehicle accident in which plaintiff sustained injuries and sought medical treatment. According to plaintiff, all of her injuries had resolved prior to the 2016 accident and no doctor attributed any or all of her current injuries to the prior accident. The judge responded:

Here is the interesting point. And this may go to credibility. When you say no doctor has done it, it's because nobody ever bothered to get the records of the prior accident. Don't you think that that's something that a jury should consider?

I mean, this woman had a prior accident, okay? And on issues of credibility, if she's asked, . . . what kind of treatment did you receive, how long was that treatment? You don't think that a jury has a right to know that?

Now, I understand that you're in a position where nobody can give an analysis here of a breakdown, but here is the problem: The problem is, there are no

5

records, there is no analysis, because none were ever provided. This doctor never sought them.

And in fact, I think on cross examination there was some question to the effect that you didn't think you would ask for this stuff? Wouldn't you want to see it? Wouldn't you want – I mean, it's almost unheard of that as a treating doctor you're not going to even ask for prior records. But don't you think that that goes to weight and credibility that a jury should be permitted to at least consider that?

In addition, defense counsel informed the judge that her medical expert, Hervey Sicherman, M.D., had reviewed records from the prior accident and included a discussion of them in his report. The judge denied plaintiff's motion and ruled that the parties could refer to the 2010 accident.

During her trial testimony, plaintiff told the jury that Dr. Hassan recommended surgery for both of her shoulders. When plaintiff's counsel inquired whether plaintiff had undergone the surgeries, defense counsel objected.

During the sidebar, the judge asked plaintiff's counsel if plaintiff was going to tell the jury she had not undergone surgery because of the cost. The judge said plaintiff could not give cost as a reason because she had not made a claim for economic damages and there was no evidence whether the surgery would be covered by insurance or PIP. Outside the presence of the jury,

A-4305-18

plaintiff's counsel instructed plaintiff not to refer to the potential cost of the surgery.

In front of the jury, plaintiff's counsel again asked plaintiff why she had not had surgery. She said she was "scared." "There is a lot of stuff that can happen, go wrong and I'm just not ready for that surgery right now."

When questioned about the prior 2010 accident, plaintiff stated she injured her neck and shoulders and treated with a chiropractor and physical therapist. She told the jury she treated for those injuries for approximately a year but then "got . . . back to . . . normal."

During the direct examination of Dr. Sicherman, defense counsel questioned him about his review of plaintiff's MRI films and asked if the doctor had the films with him. The doctor said he did not. At sidebar, defense counsel stated she had sent the films to the courthouse. No one knew if the films had arrived. Plaintiff's counsel stated he did not have a copy with him. The judge told counsel they should have worked the issue out before trial began and they would have to proceed with what they had. Dr. Sicherman then testified regarding his findings on the MRI films consistent with what was written in his report. There was no objection to the testimony.

7

Dr. Sicherman reviewed MRI films taken of plaintiff's neck and back after the 2010 accident. He testified they showed degenerative changes. In his review of 2016 MRI films, Dr. Sicherman stated they showed continuing degenerative changes. The expert opined plaintiff had not suffered any permanent injury in the 2016 accident.

The jury returned a verdict in favor of defendant and the court entered an order for final judgment.[1]

On appeal, plaintiff argues the trial court erred: (1) in barring Dr. Hassan's testimony regarding the details and costs of the recommended shoulder surgery; and (2) in allowing references to the prior 2010 motor vehicle accident. Plaintiff also asserts the admonishment of her counsel deprived her of a fair trial.

In reviewing allegations of error in a trial court's evidential ruling, we are "limited to examining the decision for abuse of discretion." Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008) (citing Brenman v. Demello, 191 N.J. 18, 31 (2007)). In other words, "[i]n light of the broad discretion afforded to trial judges, an appellate court evaluates a trial court's evidentiary determinations with substantial deference." State v. Cole, 229 N.J. 430, 449 (2017) (citing State v.

---

[1] The case proceeded only on the issue of damages. The jury found plaintiff had not proven she sustained a permanent injury proximately caused by the March 2016 motor vehicle accident.

A-4305-18

Kuropchak, 221 N.J. 368, 385 (2015)). "Thus, [this court] will reverse an evidentiary ruling only if it 'was so wide off the mark that a manifest denial of justice resulted.'" Griffin v. City of E. Orange, 225 N.J. 400, 413 (2016) (quoting Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999)).

Plaintiff argues the testimony Dr. Hassan attempted to offer regarding a recommended arthroscopic surgery was necessary as it would have helped the jury understand the nature and complexity of the shoulder injury. We disagree. Plaintiff went to Dr. Hassan on one occasion. She testified at trial that she did not plan to undergo the recommended surgery because she was afraid of it. A description of a surgery plaintiff did not undergo, and furthermore, one which she did not plan to have, is not relevant to any analysis of the permanency of her injuries.

Plaintiff had the burden to show she had a permanent injury resulting from the 2016 accident. A description of a surgical procedure did not "have[] a tendency in reason to prove or disprove" whether plaintiff sustained permanent injuries that required surgery. See R. 401. The jury was apprised of Dr. Hassan's diagnoses of plaintiff's injuries, his opinion that she sustained a permanent injury, his recommended treatment, including the arthroscopic procedure, and

9

his opinion that even with surgery, plaintiff might not return to her pre-accident functionality.

Even if the details of the recommended procedure were determined relevant, the trial judge found any probative value was outweighed by the risk of prejudice under N.J.R.E. 403 as the jury would hear about a surgery that plaintiff did not intend to have. Therefore, the "trial court's weighing of probative value against prejudicial effect 'must stand [because] it can[not] be shown that the trial court palpably abused its discretion, that is, that its finding was so wide of the mark that a manifest denial of justice resulted.'" Cole, 229 N.J. at 449 (quoting State v. Carter, 91 N.J. 86, 106 (1982)).

The same reasoning applies to the testimony regarding the costs of the proposed surgery. Plaintiff argues before this court that she did not have sufficient PIP coverage to pay the surgical costs and the jury should have been informed of that fact. She states this is another reason why she did not have the surgery and the jury should have considered it as a future economic claim.

However, plaintiff did not plead a claim for economic damages. Nor did she tell the judge during the discussion of the editing of Dr. Hassan's videotaped testimony that she did not have the surgery because she could not afford it. In addition, the surgery was speculative; as stated, plaintiff did not intend to have

10

it. Therefore, the court properly denied the testimony under its Rule 403 balancing analysis. Without any information as to the true costs, and whether some portion of the costs might be covered by PIP benefits or health insurance, any proffered figure was not grounded in fact nor could it be subject to cross-examination.

We discern no error in the references to plaintiff's prior motor vehicle accident. She told the jury she had injured her neck and back in that accident. During a defense medical examination conducted for the prior accident, she described injuring her neck and shoulder in the 2010 incident. Here, plaintiff informed the jury she hurt her neck, back and shoulders in the 2016 accident. However, plaintiff stated she had fully recovered from her prior injuries.

Dr. Sicherman provided testimony that imaging studies done in 2010 and 2016 showed plaintiff had degenerative changes in her neck and back in 2010 and 2016. Therefore, there was testimony before the jury that plaintiff's condition was not caused solely or at all by the 2016 motor vehicle accident but instead, partially or wholly, from a degenerative condition. Defendant established a sufficient logical connection between the injuries sustained in the two accidents for the jury to hear of the prior accident, alleged injuries and

A-4305-18

medical treatment.  See Allendorf v. Kaiserman Enters., 266 N.J. Super. 662 (App. Div. 1993); Paxton v. Misiuk, 34 N.J. 453 (1961).

We are unpersuaded by plaintiff's contention that her counsel was admonished by the judge before the jury, resulting in an unfair trial.  The record reflects that the discussion regarding the MRI films occurred at sidebar.  The judge did not single out plaintiff's counsel; to the contrary, the judge stated during the sidebar conversation that both counsel should have resolved the issue of production of the films before trial.  That ended the discussion.  Plaintiff has not demonstrated any error, much less an accumulation of errors that deprived her of a fair trial.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12

A-4305-18