**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1847-22

BRIAN LAUL, SR.,

     Plaintiff-Respondent,

v.

INSTANT AIR HEATING &
COOLING, and JAIME DEDIOS,
individually and/or as agent, servant,
and/or employee of INSTANT AIR
HEATING & COOLING,

     Defendants-Appellants.

_____

Argued January 30, 2024 – Decided August 22, 2024

Before Judges Haas and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-2297-19.

Thomas W. Matthews argued the cause for appellants (Bennett, Bricklin & Saltzburg, LLC, attorneys; Thomas W. Matthews, of counsel and on the briefs).

Kevin L. Parsons argued the cause for respondent (Hanus & Parsons, LLC, attorneys; Kevin L. Parsons, on the brief).

PER CURIAM

Defendants, Instant Air Heating & Cooling (Instant Air), and its employee, Jaime Dedios, appeal from a February 16, 2023, order entering a $3,367,401.42 judgment in favor of plaintiff Brian Laul, Sr. The judgment reflected a jury verdict for injuries plaintiff sustained in an auto accident caused by defendants, and followed the entry of a February 3, 2023, order denying defendants' motion for a new trial. We affirm.

We glean these facts from the record. On October 12, 2017, plaintiff was driving on the Garden State Parkway when his vehicle was struck by a tire that dislodged from a truck owned by Instant Air and driven by Dedios. Plaintiff filed a complaint against defendants on March 21, 2019. In the complaint, plaintiff alleged he sustained "severe and permanent" injuries because of defendants' negligence. On October 15, 2020, the trial judge granted plaintiff's unopposed summary judgment motion "as to all issues of liability." As a result, the case proceeded to trial on damages only.

Prior to trial, plaintiff moved in limine to exclude certain evidence. By way of background, in addition to the October 12, 2017, automobile accident at issue, plaintiff had been involved in two other automobile accidents—the first occurred on January 30, 2012, and the second occurred on December 4, 2017.

2

In the in limine motion, plaintiff sought to bar all references to the December 4, 2017, accident and associated medical treatment as well as to "redact[]" all questioning about the accident posed to his expert, Dr. Joshua Landa, during a July 1, 2021, de bene esse deposition. Defendants opposed the motion. On August 6, 2021, the judge denied plaintiff's motion, agreeing with defendants that the evidence bore on "the issues of credibility and causation."

Trial began on December 7, 2022. Plaintiff testified that during the October 12, 2017, accident, the tire from defendants' truck struck his vehicle "[o]n the passenger bumper, grill, and hood area," resulting in both the driver and passenger air bags deploying and hitting plaintiff "in the face," "torso[,] and arm." Plaintiff experienced pain in his "neck," "left shoulder, [and] left arm," and was taken by his son to the Robert Wood Johnson University Hospital Emergency Room, where he received a "quick examination and x-ray."

A couple weeks later, on October 30, 2017, plaintiff was treated by Dr. Sheref Hassan, an orthopedic surgeon at the Landa Spine Orthopedic Center who was qualified as an expert in the field of orthopedic medicine. Plaintiff testified that he sought treatment because "[he] was in pain" and he was "getting worse." Hassan testified that during his evaluation, plaintiff "primarily complain[ed] of symptoms going to his left shoulder area." Plaintiff described the shoulder pain

3

as "sharp," "sever[e]," and "limiting [at] times." Plaintiff told Hassan that he had been in a previous auto accident in 2012 "where he [had] sustained a cervical spine fracture, rib fractures, and a left shoulder injury." However, plaintiff informed Hassan that after treatment, which included cervical fusion surgery, he had a full recovery and "no pain in his left shoulder" until the recent October 12, 2017, accident.[1]

Upon examination, Hassan found "measurable weakness" in plaintiff's left shoulder "compared to the other side." Initially, Hassan diagnosed plaintiff with "bursitis," "impingement," and "[muscle] strain" in the left shoulder. He prescribed "physical therapy," "anti-inflammatory medications," and "modif[ied] . . . activities." On November 16, 2017, plaintiff returned to Hassan, complaining of "localized . . . left shoulder pain." Despite attending physical therapy, plaintiff told Hassan "his pain was worsening and he was struggling more and more in the use of his shoulder[ and] . . . overhead activities." Hassan referred plaintiff for an MRI.

---

[1] Plaintiff reported that after the 2012 accident, he received a cervical spine MRI on January 30, 2012, and was "diagnosed . . . as having multiple herniated discs . . . in his neck that were pressing on the nerves and . . . causing pain to emanate out into his arms." Plaintiff underwent cervical fusion surgery on February 22, 2012, and continued to receive treatment until approximately August 2013, when plaintiff stopped experiencing significant pain.

A-1847-22

When plaintiff returned to Hassan on December 14, 2017, Hassan reviewed plaintiff's December 11, 2017, MRI results and found nothing significant in plaintiff's left shoulder that would explain the "severity of [plaintiff's] symptoms." Given plaintiff's "prior history of cervical spine surgery and fusion," Hassan believed plaintiff's "symptoms may be related to the cervical spine pathology," and "referred him for a cervical spine MRI." In addition, Hassan referred plaintiff to Landa, "a spine specialist" in the same practice. During the December 14, 2017, visit, plaintiff also told Hassan that he had been involved in another auto accident on December 4, 2017, during which he "hurt [his] nose." However, according to Hassan, there was no change in plaintiff's symptoms as a result of the December 4, 2017, accident.[2]

On January 11, 2018, plaintiff received a cervical spine MRI. Plaintiff returned to Hassan on February 5, 2018, and continued to express the same complaints of "pain," "weakness," and "limited motion" in his left shoulder. Hassan reviewed the MRI and observed "a substantial disc herniation . . . on the

---

[2] Plaintiff testified that during the December 4, 2017, accident, he broke his nose "when the air bag deployed," causing "[t]he cover on the steering wheel" to strike his face. Plaintiff was taken to Robert Wood Johnson University Hospital by ambulance. Although plaintiff reported feeling no other injuries besides the broken nose, he was placed in a cervical collar in accordance with "standard [hospital] procedure."

left-hand side, causing pressure on the spine." Hassan believed the MRI "explain[ed] a lot of what [plaintiff] was feeling and correspond[ed] to his symptoms." Considering plaintiff's history and the fact that he had been asymptomatic after the 2012 accident and cervical fusion surgery, Hassan opined that the "neck injury" plaintiff sustained in the October 12, 2017, accident "caus[ed] his . . . new[-]found symptoms."

Based on Hassan's referral, Landa, who was qualified as an expert in the field of "orthopedic biomechanics and spine surgery," evaluated plaintiff on February 22, 2018. The evaluation revealed that plaintiff had "limited painful active range of motion of the cervical spine," "tenderness in the palpitation," and "muscular spasms." Landa detected "some pinching of a nerve in the neck," which sent "a shock of pain . . . down [plaintiff's] left arm" and "numbness in his fingers."

Landa also examined plaintiff's medical records, ranging from 2012 to present. Landa noted that plaintiff had consistently complained of "[n]eck pain" and "left shoulder pain" at the emergency room immediately following the October 12, 2017, accident as well as during the ensuing physical therapy sessions. Landa was also aware of plaintiff's December 4, 2017, accident and reviewed the medical records associated with that accident, including a CT scan

A-1847-22

of the neck and plaintiff's complaints of "[h]ead" and "facial pain" while at the emergency room. Based on his review, Landa opined that the December 4, 2017, accident "did[ not] cause any significant neck injury."

In addition, Landa reviewed plaintiff's 2018 cervical spine MRI, which "showed a disc herniation at C5-6 pressing on the nerves on the left." Landa compared plaintiff's 2017 MRI with his 2018 cervical spine MRI, noting that plaintiff "had a normal shoulder MRI and yet a severe problem . . . [in] the cervical spine MRI, . . . ma[king] it quite clear that his problem was not his shoulder, but, rather, his neck," which "corresponded with his symptoms and his physical examination." Landa also examined plaintiff's 2012 MRI results, where the herniation present in the 2018 cervical spine MRI did not appear.

After some additional confirmatory testing, Landa concluded that plaintiff had a "traumatically induced C5-6 disc herniation." Landa opined that plaintiff's "[c]ervical disc displacement" was caused by the October 12, 2017, accident and that it was "a permanent condition."[3] Initially, Landa recommended "cervical epidural injection," which plaintiff received. However, Landa acknowledged

---

[3] In contrast, defendants' expert, Dr. Wendell Scott, who was also qualified as an expert in the field of orthopedic medicine and orthopedic surgery, opined that plaintiff "had preexisting disease at the C5-6 level dating back to 2012," which condition "was permanent prior to 2017."

that "the relief would almost certainly be, at best, temporary." Ultimately, when plaintiff continued to complain of "persistent severe neck and left upper extremity pain, numbness and tingling in his left hand," Landa recommended cervical spinal surgery. Plaintiff underwent the surgery on May 24, 2019. According to Landa, although the surgery "reduced his pain," plaintiff still has "residual pain which will almost certainly persist for the rest of his life" along with "some degree of functional limitations."

At the close of defendants' case, plaintiff twice moved for a directed verdict on the issue of causation, arguing defendants had failed to provide competent proof that plaintiff's injuries were not caused by the October 12, 2017, accident. In opposing the motions, defense counsel explained to the judge that the defense position throughout the trial had been that "the need for the surgery was the result of the December 2017 accident or perhaps it was the result of the adjacent segment syndrome." For example, during opening statement, defense counsel had asked the jury to focus on "whether there was any diagnosis or any treatment . . . in between the October 2017 accident and the December 2017 accident." During cross-examination, Hassan had been questioned about the fact that plaintiff "had been treated strictly for his shoulder" up until

December 2017, when the treatment switched to his neck. The judge denied plaintiff's motions, concluding there was a factual dispute regarding causation.

During a charge conference conducted prior to closing statements, defendants sought to "remove the language instructing [the] jury [that defendants bore] the burden of establishing that the injury suffered related to a subsequent December accident." Defendants argued the charge improperly shifted the burden of proof to the defense on the issue of causation. The judge denied the request.

Thereafter, during summation, defense counsel reiterated that he had asked the jurors "to see if there[ was] any treatment for the neck in between the October accident and the December accident and there was[ not]." Defense counsel also pointed out that although plaintiff "denie[d] that he injured his neck in [the December] accident," nonetheless, he was transported to the emergency room by ambulance where he was "put . . . in a cervical collar" and underwent "a CAT scan of the neck." Additionally, defense counsel stressed that "[i]t [was] the defense's position . . . that the neck surgery was not related" to the October 2017 accident because plaintiff "had no treatment" to his neck "until an accident . . . that happened afterwards."

Following summations, the judge charged the jury as follows:

[P]laintiff alleges he sustained permanent injury to his cervical spine as a result of the collision and incurred medical expenses to treat that injury. Defendant disputes the nature and severity of . . . plaintiff's damage claim.

. . . .

The burden of proof is on the plaintiff to establish his claim by a preponderance of the evidence. In other words, if a person makes an allegation then . . . that person must prove the allegation.

In this action, . . . plaintiff . . . has the burden of establishing by a preponderance of the evidence all of the facts necessary to prove the following issues:

The injuries suffered by . . . plaintiff . . . were the result of the October 12[], 2017[,] incident and he suffered and will suffer past and future pain, disability, impairment, and loss of enjoyment of life.

. . . [D]efendants . . . have the burden of establishing by a preponderance of the evidence all of the facts necessary to prove the following issue:

The injur[ies] suffered by plaintiff are not the result of the incident, but the result of a subsequent accident.

On December 9, 2022, the jury returned a verdict in favor of plaintiff. Defendants moved for a new trial pursuant to Rule 4:49-1, again objecting to the jury instruction that defendants bore the burden of proving that plaintiff's injury was caused by the December 2017 accident. Following oral argument

conducted on February 3, 2023, the judge entered an order denying the motion. In an oral opinion, the judge rejected defendants' contention, finding "that there ha[d] been no clear and convincing miscarriage of justice . . . warranting a new trial," and "[n]o party [had been] prejudiced by the jury charge . . . because it clearly outline[d] each party's trial position."

The judge summarized defendants' arguments as follows:

> [D]efendant[s] move[] for a new trial, arguing there was an improper shifting of the burden upon . . . defendants to disprove plaintiff's claim. Defendant[s] assert[] the . . . jury charges were contradictory and confusing because plaintiff bore the burden of proving the October 12, 2017[,] incident caused his injury. . . . [D]efendants contend the [c]ourt improperly required the defense to establish that the December accident was the probable cause of plaintiff's injury . . . .
>
> . . . .
>
> Defendants argued that under Rodriguez v. Wal-Mart Stores, Inc., 237 N.J. 36, [66-68] (2019), they were raising the possibility, and not the probability, that the injury sustained by . . . plaintiff [was] the result of or exacerbated by the December 4, 2017, accident. On that basis, defendants contend they need not offer any competent proof to show a causal relationship between injuries sustained by plaintiff and any particular incident.

The judge determined that defendants' reliance on Rodriguez was misplaced because Rodriguez did not waive defendants' "burden of proof in

11

showing the December 4[], 2017[,] accident was a potential cause of plaintiff's injuries." According to the judge, "[p]laintiff's burden was to show that the October 12, 2017[,] incident caused those injuries and that burden was never shifted." On the other hand, "defendants' case sought to demonstrate plaintiff was injured or suffered exacerbation of an injury in the subsequent December 4, 2017[,] accident."

The judge explained:

> Defendants elicited testimony in cross-examination to create an inference that plaintiff suffered neck injuries as a result of the December accident. Further, defendants have attempted to create an impression that plaintiff['s] injuries sustained in 2012 were exacerbated not only by the October incident, but by some other incident, namely, the December accident. Defendants highlighted that plaintiff received no treatment to his [n]eck after the October [accident], but noted plaintiff did seek diagnosis and treatment after the December accident, which included the CT scan of his neck.
>
> Finally, defendants attempted to place into the minds of the jurors the possibility that a scan taken after the December accident showed progression or deterioration of plaintiff's neck condition existing since 2012. Again, these assertions imply that defendant sought to establish a link between the December accident and the plaintiff's injuries or exacerbations thereof. Defendants failed to put in competent proof on the record to support any of these possibilities, . . . yet defendant[s] now seek[] a new trial, arguing their own

12

failure to link plaintiff's injuries to the December accident are grounds for this relief.

Although testimony is admissible to show possibilities that caused or exacerbated plaintiff's injuries, once admitted, defendants bear the burden of proving these possibilities by way of competent proof.

. . . .

. . . Applying defendants' logic, plaintiff would be burdened with not only proving his contention, but also disproving any abstract possibility raised by defendants in the absence of competent proof to support such abstract possibilities. Essentially, defendant[s] would bear no burden whatsoever. Any unsupported allegation would remain for the jury to consider unless the plaintiff affirmatively disproved them. It would be contrary to the basic principles of the American justice system to have a party argue a position for which they are not advocating.

[(Citation omitted).]

To further support his ruling, the judge also considered the rationale for denying "plaintiff's motion for a directed verdict at the close of defendant[s'] case."

Subsequently, on February 16, 2023, the judge entered a conforming order for judgment in plaintiff's favor, and this appeal followed. On appeal, defendants reprise the arguments rejected by the judge for our consideration. Based on our review of the record and the applicable legal principles, we too find defendants' arguments unavailing.

13

The principles governing our review are well settled.

> "A jury verdict is entitled to considerable deference and 'should not be overthrown except upon the basis of a carefully reasoned and factually supported (and articulated) determination, after canvassing the record and weighing the evidence, that the continued viability of the judgment would constitute a manifest denial of justice.'" Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 521 (2011) (quoting Baxter v. Fairmont Food Co., 74 N.J. 588, 597-98 (1977)). A trial court therefore grants a motion for a new trial only "if, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a miscarriage of justice under the law." Crawn v. Campo, 136 N.J. 494, 511-12 (1994) (quoting R. 4:49-1(a)).

> "The standard of review on appeal from decisions on motions for a new trial is the same as that governing the trial judge—whether there was a miscarriage of justice under the law." Risko, 206 N.J. at 522; accord R. 2:10-1 ("The trial court's ruling on such a motion shall not be reversed unless it clearly appears that there was a miscarriage of justice under the law."). We have explained that a "miscarriage of justice" can arise when there is a "manifest lack of inherently credible evidence to support the finding," when there has been an "obvious overlooking or under-valuation of crucial evidence," or when the case culminates in "a clearly unjust result." Risko, 206 N.J. at 521-22 (quoting Lindenmuth v. Holden, 296 N.J. Super. 42, 48 (App. Div. 1996)).

> [Hayes v. Delamotte, 231 N.J. 373, 385-86 (2018).]

Defendants seek a new trial on the ground that the jury verdict was the result of an erroneous jury charge. Because appropriate and proper jury instructions are essential for a fair trial, Prioleau v. Ky. Fried Chicken, Inc., 223 N.J. 245, 256 (2015), we have held that a jury instruction that misleads a jury may require a reversal and a new trial, Vallejo by Morales v. Rahway Police Dep't, 292 N.J. Super. 333, 342 (App. Div. 1996); see also Washington v. Perez, 219 N.J. 338, 351 (2014) ("Generally, 'erroneous instructions on material points are presumed to be reversible error.'" (internal quotation marks omitted) (quoting McClelland v. Tucker, 273 N.J. Super. 410, 417 (App. Div. 1994))).

Indeed, "[a] jury is entitled to an explanation of the applicable legal principles and how they are to be applied in light of the parties' contentions and the evidence produced in the case." Viscik v. Fowler Equip. Co., 173 N.J. 1, 18 (2002) (quoting Rendine v. Pantzer, 276 N.J. Super. 398, 431 (App. Div. 1994)). To that end, "[j]ury charges 'must outline the function of the jury, set forth the issues, correctly state the applicable law in understandable language, and plainly spell out how the jury should apply the legal principles to the facts as it may find them.'" Prioleau, 223 N.J. at 256-57 (alteration in original) (quoting Velazquez by Valazquez v. Portadin, 163 N.J. 677, 688 (2000)).

"Nonetheless, not every improper jury charge warrants reversal and a new trial. 'As a general matter, [appellate courts] will not reverse if an erroneous jury instruction was "incapable of producing an unjust result or prejudicing substantial rights."'" Id. at 257 (alteration in original) (quoting Mandal v. Port Auth. of N.Y. & N.J., 430 N.J. Super. 287, 296 (App. Div. 2013)). Still, "[i]n civil matters, the trial court should give an instruction that appropriately guides the jury on the legal basis of a plaintiff's claim or a defendant's affirmative defense, so long as there is a reasonable factual basis in the evidence to support that claim or defense." Walker v. Costco Wholesale Warehouse, 445 N.J. Super. 111, 120 (App. Div. 2016).

In our review of a jury charge, we "examine the charge as a whole, rather than focus on individual errors in isolation." Viscik, 173 N.J. at 18. "Stated differently, an appellate court must consider the language surrounding an alleged error in order to determine its true effect." Ibid.; see also Mogull v. CB Commer. Real Est. Grp., 162 N.J. 449, 464 (2000) ("There is no reversible error 'where the charge, considered as a whole, adequately conveys the law and is unlikely to confuse or mislead the jury, even though part of the charge, standing alone, might be incorrect.'" (quoting Fischer v. Canario, 143 N.J. 235, 254 (1996))).

Applying these principles, we discern no basis to intervene. Defendants contend the jury charge "misstated" their position because "[they] did not claim the injuries were caused by the subsequent accident." Instead, defendants proffer that their position "was that . . . Landa failed to properly consider the facts of the subsequent accident when formulating his opinion" regarding plaintiff's injuries. Thus, defendants reiterate that the "jury charge improperly shifted" the burden to them to "prove something that . . . [they] had not argued" and "to disprove plaintiff's claims." As such, defendants assert "[t]he combination of the misstatement of [their] position" and "the imposition of a duty . . . to prove something they had not argued" resulted in a charge that was "contradictory," "confusing," and "misleading."

Our Supreme Court has "long recognized that every defendant, in response to an allegation that his negligence has caused injury, possesses the right of demonstrating by competent evidence that that injury 'could' have been caused, wholly or partly, by an earlier accident or by a pre-existing condition." Davidson v. Slater, 189 N.J. 166, 187 (2007) (quoting Paxton v. Misiuk, 34 N.J. 453, 460-61 (1961)). However, a defendant "must show that the evidence has some 'logical relationship to the issue in the case.'" Allendorf v. Kaiserman Enters., 266 N.J. Super. 662, 672 (App. Div. 1993) (quoting Paxton, 34 N.J. at

17

460).  "[T]his logical relationship generally must be established by appropriate expert medical opinion."  Ibid.  As such, the defendant must provide "competent proof from which it could be found that the injury [at issue] was . . . attributable to" a different incident, rather than to just the incident involving the defendant.  Paxton, 34 N.J. at 461.  "The general test of admissibility of such evidence is 'one of possibility, rather than probability.'"  Allendorf, 266 N.J. Super at 673 (quoting Paxton, 34 N.J. at 461).

Here, defendants do not dispute that the judge correctly charged the jury that plaintiff had the burden to prove that his injuries were the result of defendants' negligence during the October 2017 accident.  See Reichert v. Vegholm, 366 N.J. Super. 209, 214 (App. Div. 2004) ("[T]he general rule is that 'the burden of proof that the tortious conduct of the defendant has caused the harm to the plaintiff is upon the plaintiff.'" (quoting Restatement (Second) of Torts, § 433B(1) (Am. L. Inst. 1965))).  Instead, despite consistently advocating throughout the trial that the December 2017 accident, rather than the October 2017 accident, caused plaintiff's neck injuries, defendants now assert that they "did not argue, either during the motion [to bar] or at trial, that the December accident caused the injury," and the jury charge thereby improperly shifted the burden of proof to them.  Defendants' contention is disingenuous.

In response to plaintiff's allegation that the October 2017 accident with defendants was the sole cause of plaintiff's neck injury, defendants countered that the neck injury was likely caused by the later December 2017 accident. Although defendants were free to assert that another incident caused or otherwise contributed to plaintiff's injuries, see Davidson, 189 N.J. at 187, defendants were obligated to support that contention with competent medical testimony, Paxton, 34 N.J. at 461, which they failed to do. In fact, defendants conceded they had no "[medical] proofs" to support their contention "that the December accident caused [plaintiff's] injury." Although defendants produced Scott as an expert witness, Scott did not offer an opinion on whether the December accident had any effect on plaintiff's condition.

Absent competent proof, consideration of defendant's position regarding the December 2017 accident would have invited the jury to engage in unsupported speculation. Based on our examination of the charge as a whole and the governing law, we are satisfied the jury instruction properly precluded the jury from speculating as to the cause of plaintiff's injuries without appropriate corroboration. Thus, the judge correctly denied defendants' motion for a new trial on the basis of a purportedly erroneous jury charge.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

19

A-1847-22